No. 20,386.

MRS. LOUISA O. STEINMAN, *Appellee,* V. THE JOHN HALL
TAILORING COMPANY, *Appellant,* and GRANT BILLBE, *Appellee.*

### SYLLABUS BY THE COURT.

1. AGENCY—*Established by the Evidence.* The evidence touching the authority of one holding himself out as an agent is examined and found sufficient to sustain his agency.

2. LEASE.—*Abandonment—Mitigating Damages—Duty of Landlord.* The plaintiff declared on a written lease for one year with the privilege of extending to five, an abandonment after paying two month's rent, and failure to return the keys. The prayer was for the rent for the remainder of the year. The proof showed the receipt of two month's rent from a subsequent tenant. The verdict was for less than the difference between a year's rent and the four months collected for. The answer denied indebtedness and denied the relation of landlord and tenant. There was neither allegation nor evidence of the plaintiff's failure to use reasonable diligence to mitigate damages. *Held,* not error to refuse instructions on such failure.

Appeal from Allen district court; OSCAR FOUST, judge.
Opinion filed February 10, 1917. Affirmed.

*R. H. Bennett,* and *R. E. Cullison,* both of Iola, for the appellant.

*F. J. Oyler,* of Iola, for appellee Louisa O. Steinman.

The opinion of the court was delivered by

WEST, J.: This was an action to recover rent. Mrs. Steinman leased her store room to somebody for a year with the privilege to the lessee of extending to five years. After a short time the room was vacant and the rent money unobtainable.

The plaintiff recovered and the defendant appeals, vigorously assailing numerous rulings by the trial court, all of which we have examined. Out of the entire record but two meritorious questions arise—the authority of a certain agent, and the matter of minimizing damages.

O. W. Holmes of Iola saw an advertisement signed John Hall Tailoring Company, calling for a clothes salesman, and thereby got in touch with one C. E. Paden. Paden told Holmes

that he was an agent of the John Hall concern, that handled a line of clothing, made its own goods, having woolen mills in Connecticut or Massachusetts; that he was putting in stores for the company in other parts of the country. · Under his direction Holmes made application through Paden for a position at Iola. Paden found the Steinman building and went with Holmes to see Mrs. Steinman, told her they wanted to rent it for the John Hall Tailoring Company of Chicago, that he was its representative and the company would conduct the business and Holmes would be its local manager. That whenever the John Hall Tailoring Company went into a place they stayed there and that she was sure of her money. Following Holmes' application for the position samples of suit ends were sent by the John Hall Tailoring Company by express to Iola, addressed to John Hall Tailoring Company. Paden remained several days. Holmes received about a thousand circulars from the Hall concern advertising a special sale that Paden had arranged for at Iola. This was a dodger about twelve by eighteen inches, purporting to advertise a sale of new woolens "direct from the big John Hall Tailoring Co." At the bottom were these words:

· JOHN HALL<br>
Tailor<br>
18 So. Washington St.,<br>
Iola, Kansas.

This was the location of Mrs. Steinman's store room. Later he received by mail from the defendant a letter on stationery containing an illustration shown by "Exhibit 7." This gives the address of the general officers as 407-409-411-415-417 South Sangamon street, Chicago. It has an attractive cut of a nine-story building, from the flag staff of which flies a pennant with the device "John Hall." At the foot of the flagstaff and at right angles are two sign boards each containing the name John Hall facing the two streets on which the building appears to corner. Printed over the cut of this building are the words

"JOHN HALL.<br>
Tailor ·<br>
(Incorporated)<br>
Branch Stores in all Principal Cities<br>
Cable Address 'Hall Mark'."

In a short time Grant Billbe succeeded Holmes, who turned the business and supplies back to Paden and took a receipt

from him filled out on a blank form with the printed signature "John Hall," under which Paden signed "By C. E. Paden." Paden and Billbe secured a written lease from the plaintiff which, by direction of Paden, was signed "John Hall Tailoring Co., Grant Billbe, Manager." Billbe gave up the business at the end of two months and was checked out by Paden, who receipted for certain display ends and equipment belonging to John Hall, Inc., Chicago, Ill., and signed the receipt "C. E. Paden." This was typewritten and not on a printed form..

Billbe's successor was L. L. Black, who was told by Paden that the latter had leased the building. Black received a thousand circulars like the one already described, which were printed by Paden. Paden told Black that he was the company's district manager, anything that he did "the company would go behind"; that the company would pay the rent and advertising expenses except the little locals which were to be put into the paper at Iola for which Black was to pay. Black signed a printed application and agreement reciting the appointment as the exclusive representative in Iola, Kan., of John Hall, Inc., of Chicago, Ill., containing the agreement that "I will conduct this as an exclusive branch store," and the further agreement to keep fully insured for the benefit of John Hall, Inc., any and all parts of the necessary outfit furnished him and to return the same in whole or in part as called for within two days after receipt of notice. Black conducted the business for about twenty-four days and, although checked in by Paden, does not appear to have been checked out by him. The deposition of Karl Jackson was taken by the defendant at its office in Chicago. Mr. Jackson testified that the defendant was an Illinois corporation with a president, treasurer, secretary and vice president, himself being the credit man and general manager; that his duties were "the employment of salesmen, the instructions of them and their duties, the overseeing of credits, and the general routine of office work."·

He testified that John Hall had never operated stores in any cities whatever in the name of John Hall Tailoring Company. That the by-laws of the corporation provide that all written instruments shall be signed in the name of the company by the president and attested by the secretary, attaching the corporate seal; that Holmes operated a store in Iola under the

name of John Hall Tailoring Company; that John Hall had no interest whatever in the profits derived from such store, that the relation between John Hall and C. E. Paden was that of employer and employee; that the witness employed Mr. Paden in the capacity of salesman, and that his duties consisted of soliciting orders; that he gave Paden specific instructions to have merchants handle John Hall's line of merchandise, sending the orders to the factory to be made up as per the merchant's instructions; that Mr. Paden had no authority to do anything besides soliciting orders from merchants; that he had no authority to collect from the merchants or to execute instruments for John Hall or to make any special arrangements with customers. Although he gave the names of those he said were officers of the defendant corporation, neither the testimony of any of them nor that of Mr. Paden himself was offered.

Without going further into the matter, quoting from more of the voluminous evidence, it is enough to say that from the record we are satisfied with the trial court's view of Paden's agency and find no error in respect to the admission of evidence in relation thereto.

The defendant requested the court to instruct that in case of breach of contract by one party it becomes the duty of the other to use reasonable diligence to minimize the damages resulting from such breach; also that unless the jury should find that the plaintiff, when she learned of the breach of the lease, used ordinary diligence and efforts to rent the building they should not allow any damages resulting from such lack of ordinary diligence. These instructions were refused. The jury were charged that if they should find for the plaintiff upon her first cause of action she would be entitled to recover rent at the rate of $35 a month for one year from May 1, 1914, less amount paid to her upon the lease, and also less any amount of rent she may have received from the premises for the months of March and April, 1915. They found for the plaintiff in the sum of $245 and costs. The plaintiff testified that she received only two months' rent from the defendant, and two months' rent from Mr. Parrott, who moved in March 1, 1915.

Counsel are correct in their contention that it was the duty of the plaintiff to use ordinary diligence to minimize the damage caused by the defendant's abandonment of the lease. (*Brown v. Cairns,* 63 Kan. 584, 66 Pac. 639, and cases cited; *Atkinson v. Kirkpatrick,* 90 Kan. 515, 135 Pac. 579; *Maddux v. Telegraph Co.,* 92 Kan. 619, 141 Pac. 585.)   The answer of John Hall made no mention of failure in this respect on the part of plaintiff, but denied indebtedness and denied any contractual relation whatever with her.   While, according to many authorities, the defendant might have shown lack of ordinary care in this respect, under its denial no attempt so to do was made.   In some jurisdictions such a defense must be specially pleaded.   (13 Cyc. 182; 8 R. C. L. p. 618; 14 M. A. L. p. 73; 4 Sedgwick on Damages, 9th ed., § 1271a, and cases cited in note; Pomeroy's Code Remedies, 3d ed., §§ 607, 608, 693 *et seq.*)

In view of the terms of the lease, the allegations of the second amended petition, the amount collected, the sum sued for and the amount recovered, the defendant can not in the absence of any allegation or evidence touching the question justly complain of the court's refusal to give the requested instructions.

Various other matters are pressed, but are not of sufficient importance to merit any further extension of this opinion.

The conclusion reached by the triers of fact was approved by the court below and supported by the evidence.

The judgment is affirmed.