HELEN BERNSTEIN, APPELLEE, V. NATHAN SEGLIN, APPELLANT.
171 N. W. 2d 247

Filed October 17, 1969. No. 37216.

Marks, Clare, Hopkins & Rauth, for appellant.

Kartman & Fike, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action for the recovery of rental on a lease. The trial court sustained a motion for a directed verdict

and entered judgment for the plaintiff. The defendant has appealed.

The plaintiff, Helen Bernstein, as lessor, and the defendant, Nathan Seglin, as lessee, entered into a written lease of a business building in Omaha, Nebraska, in June 1961. The lease was for a term of 7 years commencing July 1, 1961, and terminating June 30, 1968. The lease provided for a basic rental of $200 per month plus 2 percent of gross sales exceeding $144,000 per year. No percentage rental was ever due and the percentage clause was inoperative at all times.

The lease prohibited assignment and subletting without the previous written consent of the landlord. The concluding portion of the assignment paragraph provided: "Landlord agrees not to withhold his consent arbitrarily where the proposed assignee is a financially responsible and experienced retail grocer." It was stipulated that the limitation of the type of business to a retail grocer was waived.

The defendant took possession under the lease July 1, 1961, and operated his business on the premises through January 1964. On January 31, 1964, the defendant Seglin sold his business to Bernard W. Sharon, and assigned the lease to Sharon. The assignment executed by the defendant and the consent to the assignment executed by the plaintiff both provided that the defendant Seglin would "remain primarily liable to the lessor, jointly and severally with the assignee, for the payment of the rent payable by lessee for a period of 30 months from and after February 1, 1964 * * *."

Sharon took possession of the premises February 1, 1964, and paid the rent during his 5-month occupancy. On June 30, 1964, without notice to anyone, Sharon moved out and abandoned the premises. There was no surrender of the premises nor acceptance of surrender. It is undisputed that the plaintiff was holding the defendant responsible for the rent after Sharon's departure, and that the defendant understood that fact.

Following Sharon's departure, both the plaintiff and the defendant advertised in newspapers, posted signs, and made other efforts to rerent the premises. Defendant's efforts to find a new tenant netted several contacts and interviews but only one definite prospect developed. This was a Mrs. Hubbell. The defendant then referred Mrs. Hubbell to the plaintiff. Defendant's wife testified: "She (Mrs. Hubbell) was a prospect. She wanted to negotiate and was ready to sign a lease." There was no testimony as to what kind of a lease or for what term or on what conditions Mrs. Hubbell was prepared to negotiate. The defendant and his wife both conceded that they did not know anything about Mrs. Hubbell's financial condition. It was conceded that Mrs. Hubbell was contemplating renting the premises for use by her son for a nursery business, but neither the plaintiff or defendant ever discussed the matter with the son or knew anything about his financial condition or business experience. The interview between the plaintiff and Mrs. Hubbell did not produce any offer or proposal from Mrs. Hubbell. After the interview, the plaintiff advised the defendant's wife by telephone that the plaintiff definitely wanted more rent and that she would just sit and wait until she got the right tenant. The defendant and his wife thereupon ceased their efforts to rerent the property.

Plaintiff conceded that she wanted a rental of $300 per month, which was the amount she had received prior to the defendant's lease. She also testified that she would have negotiated a lower rent for the right person or someone who had a good credit rating and was a successful merchant. Plaintiff continued her efforts to re-rent the premises. Some of her advertisements carried an asking price in excess of $200 a month. She ultimately leased the premises effective January 1, 1966. The rental was $200 per month for the first 3 years and $240 per month thereafter, plus a provision requiring the tenant to expend a substantial amount in leasehold improvements.

Thereafter the plaintiff brought this action for the recovery of rental due prior to rerenting the premises.

The defendant's theory is that plaintiff's statement that she wanted more rent than the lease called for, and occasionally advertising a higher asking price, constituted constructive breach of her agreement not to withhold consent to an assignment of the lease. The defendant argues that plaintiff's actions in connection with the Hubbell negotiation, coupled with her announced desire to obtain more rent, released the defendant from any further obligation to pay rental under the lease.

The plaintiff's contention is that upon abandonment of the premises by a tenant, the landlord may either relet the premises or permit them to remain vacant and recover his rent in accordance with the terms of the lease. It is argued that there is no duty on the landlord to accept or procure a new tenant for the purpose of mitigating damages recoverable from the original tenant. Plaintiff relies upon the case of Merrill v. Willis, 51 Neb. 162, 70 N. W. 914, cited and approved in Johnston v. Jackson, 129 Neb. 545, 262 N. W. 19.

While there was no refusal to consent to assignment of the lease here, the problem with respect to the duty of the landlord to mitigate damages upon abandonment of premises by the tenant is not so clear. There is a direct split of authority on the issue. Some courts hold that there is no duty to relet after abandonment by the tenant, while others hold that a landlord is required to mitigate damages by reletting. See Annotation "Landlord's Duty, on Tenant's Failure to Occupy, or Abandonment of, Premises, to Mitigate Damages by Accepting or Procuring Another Tenant." 21 A. L. R. 3d 534 to 594. Nebraska has followed the rule imposing no duty of mitigation. Merrill v. Willis, supra (1897).

The traditional view is that a lease creates an interest or estate in land and, therefore, the lessor need not concern himself with a lessee's abandonment of his own property. A modern lease of a business building ordi-

narily involves multiple and mutual running covenants between lessor and lessee. It is difficult to find logical reasons sufficient to justify placing such leases in a category separate and distinct from other fields of the law which have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided. See Wright v. Baumann, 239 Ore. 410, 398 P. 2d 119. The perpetuation of the distinction between such a lease and a contract, in the application of the principle of mitigation of damages, is no longer supportable. We, therefore, hold that a landlord may not unreasonably refuse to accept a qualified and suitable substitute tenant for the purpose of mitigating the damages recoverable from a tenant who has abandoned the leased premises prior to the expiration of the term. Merrill v. Willis, 51 Neb. 162, 70 N. W. 914, is overruled as to this issue.

Where a tenant who has abandoned premises pleads a failure to mitigate damages as a defense to relieve himself of the results of his own default, the burden of proof ought to be on the tenant. Steinman v. John Hall Tailoring Co., 99 Kan. 699, 163 P. 452; Home Owners' Loan Corp. v. Baldwin, 265 App. Div. 864, 37 N. Y. S. 2d 822. In an action by the landlord to recover rental from a tenant who has abandoned the leased premises prior to the expiration of the term, the burden is on the tenant to prove that the landlord unreasonably failed to relet the premises and mitigate damages.

Gauged against these principles, the defendant here failed to prove any arbitrary or unreasonable refusal to accept any tenant. The only prospect revealed by the evidence was a Mrs. Hubbell. There was no evidence that either she or her son were financially responsible or that she ever offered to rent the premises for any specific term or offered any definite amount of rent. There was no evidence that the exercise of reasonable diligence on the part of the plaintiff would have resulted in securing another suitable tenant at an earlier date, nor was there any evidence as to the amount of rent that

could have thus been obtained. The plaintiff's efforts ultimately resulted in a new tenant at the same rental provided in the lease.

The district court correctly found that there was no arbitrary or unreasonable refusal to consent to an assignment of the lease. It is also clear that there was no unreasonable refusal to accept a qualified and suitable substitute tenant. The action of the trial court in granting plaintiff's motion to withdraw the case from the jury and enter judgment for the plaintiff was correct and is sustained.

AFFIRMED.