S.N. MART, LTD., A CALIFORNIA LIMITED PARTNERSHIP, ET AL., APPELLANTS, V. MAURICES INCORPORATED, A DELAWARE CORPORATION, APPELLEE.

451 N.W.2d 259

Filed February 2, 1990.    No. 88-363.

John A. Selzer, of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellants.

Leland K. Kovarik, of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

On July 28, 1978, the plaintiff S.N. Mart, Ltd., leased a 2,800-square-foot store space in the K Mart shopping center in Scottsbluff, Nebraska, to Maurices Nebraska, Inc. The lease

was to expire on January 31, 1990. S.N. Mart, Ltd., has since conveyed the property to the plaintiff U.S. Realty 86 Associates. The defendant, Maurices Incorporated, is the successor to Maurices Nebraska, Inc.

The lease provided for a minimum rent of $1,225 per month ($5.25-per-square-foot annual rent), payment of the proportionate share of the maintenance and taxes, and a percentage rent based upon 4 percent of annual gross sales over $426,250. The lease further provided that the premises were to be used for the retail sale of women's clothing and other related items and that the premises should not be sublet or the lease assigned without the consent of the lessor, but that consent "shall not unreasonably be withheld."

The plaintiffs commenced this action on January 5, 1987, for a judgment declaring that the lease was still in effect and the defendant was in default, that the defendant was liable for performance of all of its obligations under the lease, and that the plaintiffs had not unreasonably withheld consent to a proposed assignment of the lease to a new tenant.

The trial court found that the plaintiffs were not unreasonable in withholding consent to the proposed assignment; that the defendant was in default under the terms of the lease by abandoning the premises and failing to perform its obligations under the lease; that the lease was still in effect and the defendant was liable for the performance of all its obligations under the lease up to August 1, 1987; that the plaintiffs failed to mitigate damages by not leasing the property to Gene Wisner, a prospective tenant; and that plaintiffs were not entitled to recover any amount under the lease after August 1, 1987, because of their failure to mitigate damages.

The plaintiffs have appealed and have assigned as errors: (1) the court's finding that plaintiffs had a duty to mitigate damages; (2) the court's determination that plaintiffs breached their duty to mitigate damages and failed to mitigate damages; (3) the court's limiting Maurices' obligations under the lease to the payment of the amount owing under the lease up to August 1, 1987; and (4) the court's failure to enter a judgment in favor of plaintiffs for the total amount owing under the lease as of the time of trial, and its failure to retain jurisdiction to grant

further relief as necessary.

The trial court's determination of factual issues in a declaratory judgment action, which would otherwise be an action at law in which a jury has been waived, has the same effect as a jury verdict and will not be set aside unless clearly wrong. *Occidental S. & L. v. Bell Fed. Credit Union*, 218 Neb. 519, 357 N.W.2d 198 (1984). In considering whether the evidence is sufficient to sustain the trial court's judgment, this court examines the evidence in the light most favorable to the successful party, resolving any controverted fact in favor of the successful party, "and the successful party will have the benefit of every inference reasonably deducible from the evidence." *Middagh v. Stanal Sound Ltd.*, 222 Neb. 54, 56, 382 N.W.2d 303, 305 (1986).

When Monument Mall, a new major shopping mall, was under construction in Scottsbluff, Maurices decided to return the leased space in the K Mart shopping center to the plaintiffs, and attempted to provide a new tenant to be assigned the remaining portion of the lease. The plaintiffs refused to consent to the assignment because of the financial condition of the new tenant and the proposed use of the space.

When the plaintiffs refused to consent to the assignment, Maurices ceased performance of its obligations under the lease, claiming the plaintiffs had materially breached the terms of the lease by unreasonably refusing to consent to the assignment. Maurices vacated and abandoned the premises on October 1, 1986.

When the defendant vacated the premises, it gave the keys to the premises to Dan Dickinson, an employee of Dial Enterprises. Dial Enterprises was the managing agent for Monument Mall, which is owned by Dial Reit. Dickinson had no authority to lease the space the defendant had occupied, but was authorized to show the premises to interested parties. The plaintiff U.S. Realty had arranged for Roebling Management to represent it as managing agent, and Dickinson had only an informal, verbal arrangement with Roebling.

In May 1987, Wisner contacted Maurices because he was interested in leasing the vacant space. Maurices informed him that he should contact Dickinson.

At this time, the store space adjacent to that which the defendant had occupied was vacant. The former tenant, Payless Shoes, had relocated to Monument Mall, as had the defendant. Dial Enterprises had assumed the obligation of Payless Shoes under its lease and was paying the rent on the Payless space. Dickinson had been instructed to give the Payless space priority. Dickinson did not do anything regarding Maurices' space other than show it to Wisner and give him Roebling's telephone number.

When Dickinson showed Wisner Maurices' space as well as the Payless space, Wisner expressed his preference for Maurices' space. Dickinson told Wisner to contact Roebling or Michael Weiner, an employee of Roebling's, directly and gave him their telephone numbers. Several times Wisner left messages for Weiner regarding his interest in Maurices' space, but never received any response.

The trial court found that the plaintiffs failed to mitigate their damages by failing to lease the property to Wisner. In *Bernstein v. Seglin*, 184 Neb. 673, 171 N.W.2d 247 (1969), this court held a landlord has a duty to relet the premises in order to mitigate damages when the tenant abandons the premises prior to the expiration of the lease. The duty to mitigate requires the landlord to take all reasonable steps to reduce his damages. See *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982). In the landlord's action to recover rent upon the tenant's abandonment of the leased premises, the tenant has the burden to show that the landlord "unreasonably failed to relet the premises and mitigate damages." *Bernstein* at 677, 171 N.W.2d at 250.

The plaintiffs argue that based on *Bernstein*, their duty was only to not "unreasonably refuse to accept a qualified and suitable substitute tenant for the purpose of mitigating the damages recoverable" from Maurices. *Id*. Plaintiffs assert that Maurices did not present any evidence that the plaintiffs unreasonably refused to accept a qualified and suitable tenant.

The evidence supports a finding that the plaintiffs made no serious or diligent effort to relet the premises. They had no representative in Scottsbluff who had authority to lease the premises, and they never contacted Wisner after he expressed

his interest in Maurices' space. Wisner eventually leased the Payless space from Dial Enterprises. It was not clearly wrong for the trial court to find that the plaintiffs failed to mitigate their damages.

The plaintiffs argue that they had no duty to mitigate because § 25.5 of the lease provides:

> If Landlord shall elect to re-enter as above provided or shall take possession of said premises pursuant to legal proceedings or pursuant to any notice provided by law, and if Landlord has not elected to terminate this Lease, Landlord may either recover all rental as it becomes due or relet the Premises or any part or parts thereof for such term or terms and upon such provisions as Landlord, in its sole judgment, may deem advisable and shall have the right to make repairs to and alterations of the Premises. No re-entry or taking possession of the Premises by Landlord under this Section shall be construed as an election to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be adjudged by a court of competent jurisdiction.

We think § 25.5 merely provides that reentry does not terminate the lessee's obligations under the lease and does not absolve the lessor from the duty to mitigate the damages.

The plaintiffs argue that the trial court erred in not awarding them percentage rent pursuant to § 7.3 of the lease, which provides:

> For the purpose of computing the percentage rent under Section 5.2, the Gross Sales in any Lease Year in which Tenant does not continuously and uninterruptedly conduct its business as required by Section 7.2 shall be deemed to be the greater of the Gross Sales (i) during such Lease Year; and (ii) during such earlier Lease Year in which Gross Sales were the highest.

The evidence shows that the gross sales for the lease year ending January 31, 1986, were $629,763.29, which was the lease year in which the gross sales were the highest. The percentage rent for that lease year was $8,140.53. The lease also provides that Maurices was entitled to recover from the percentage rent on a noncumulative basis its contribution toward real estate

taxes and assessments in excess of 25 cents per square foot of the premises. Since the premises totaled 2,800 square feet, Maurices would be entitled to deduct from the percentage rent the amount of real estate taxes paid in excess of $700 per year. Taking this into account, the amount of percentage rent owing under the lease would be $8,140.53, less the amount of real estate taxes exceeding $700 for each year remaining on the lease.

Plaintiffs are correct in asserting that a failure to take reasonable steps to mitigate damages does not totally bar a recovery, but only bars recovery of damages that could have been avoided by reasonable efforts. See *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 429 N.W.2d 328 (1988).

The record shows Wisner subleased the Payless space from Dial Enterprises for $5.50-per-square-foot annual rent. Wisner testified that his new lease with U.S. Realty for the space provides for $5-per-square-foot annual rent; payment of his proportionate share of the maintenance, taxes, and insurance; and percentage rent based upon gross sales over $300,000.

Although Wisner's lease for the Payless space is similar to the lease Maurices made with the plaintiffs, the evidence does not show what percentage Wisner is to pay for gross sales over $300,000, and Wisner testified he did not expect his sales to reach that mark.

If the plaintiffs had acted reasonably to mitigate their damages and had obtained a lease such as that which Wisner has for the Payless space, they would have been entitled to the percentage rent as provided under § 7.3 of their lease with Maurices. The evidence does not sustain the trial court's finding that the plaintiffs were entitled to no percentage rent due under the lease after August 1, 1987.

The trial court was correct in its finding that the plaintiffs failed to take reasonable steps to mitigate their damages when Maurices abandoned the premises; however, it was error to deny the plaintiffs any recovery for percentage rent under the lease after August 1, 1987.

The amounts of percentage rent due under the lease depend from year to year on the amount of real estate tax over $700. The trial court has the power to retain jurisdiction in order to grant further relief for the amounts of percentage rent as they

may be determined each year until the expiration of the lease. See, Neb. Rev. Stat. § 25-21,156 (Reissue 1989); *First Nat. Bank v. Omaha Nat. Bank*, 191 Neb. 249, 214 N.W.2d 483 (1974).

The judgment of the district court is affirmed except as to the plaintiffs' right to recover percentage rent after August 1, 1987. The cause is remanded to the district court for further proceedings to determine the percentage rent to which the plaintiffs are entitled after August 1, 1987.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.