Thomas NORRIS, Appellant,

v.

Judy GREEN, Appellee.

No. 93–CV–928.

District of Columbia Court of Appeals.

Argued Feb. 8, 1995.
Decided March 27, 1995.

Stephen O. Hessler, for appellant.

R. Kenneth Mundy, for appellee.

Before FARRELL and KING, Associate Judges, and PRYOR, Senior Judge.

KING, Associate Judge:

In this civil action which grew out of a landlord-tenant dispute, Thomas Norris, a commercial landlord, ("Norris" or "landlord") challenges a jury verdict awarding him damages on his counterclaim for rent and damages, which he contends is inadequate and the denial of his request for an award of attorney fees. We agree with the landlord that he is entitled to a larger award than that made by the jury. We therefore reverse the judgment and remand with direction to enter judgment for the correct amount. We also reverse the trial court's order denying an attorney fee award, and remand for reconsideration in light of what we hold in this opinion.

## I.

### A. Lease Provisions

In November 1988 the landlord and the tenant, Judy C. Green, ("tenant") entered into a five-year lease and/or option to purchase agreement under which the tenant would operate a restaurant and nightclub on the property located at 7331 Georgia Avenue, N.W., Washington, D.C. (the "property"). The lease provided for a $2,600 monthly payment due on the first of each month, beginning on January 1, 1989, with a one hundred

dollar late fee for each five-day period the rent was late ($500 per month if over a month late). The lease also granted the landlord or his agent access to the property for physical inspections. Other provisions of the lease relevant to the dispute are: (a) the landlord would not be liable for loss of, or damages to, personal property and improvements arising from a leaking roof, bursting, leaking or overflowing water, sewerage, steam pipes or from heating or plumbing fixtures; (b) the tenant was required to make all interior and exterior repairs, replacements, and decorations, including plumbing, at the tenant's own cost and expense; (c) in the event the premises were damaged by fire or other cause covered by the landlord's insurance, without fault or negligence of the tenant or her agents, the landlord was required to repair the damages at his cost and expense, and the rent apportioned according to the usable part of the premises, until such repairs were made; (d) if the tenant defaulted on the rent, or performance of any lease condition, the landlord was entitled to recover possession of the property, and the tenant remained liable and answerable in damages for deficiency or loss of rent and any other amounts due and owing under the terms of the lease; (e) if the landlord commenced an action to recover rent due, or to compel tenant's performance of any lease obligation, the landlord "shall be entitled to recover from lessee its costs of such proceedings or suit, including a reasonable attorney's fee."

### B. Events leading to the eviction

After the tenant took possession, she made separate payments to Norris in the amount of $5,000 and $20,000 toward the $50,000 purchase price for the equipment that had previously been installed in the building. She also contracted with Norris to build some benches and booths for the restaurant, paying him $4,000 of the $8,000 cost.[1] During this period the tenant obtained a certificate of occupancy and a restaurant license, but was unable to obtain a liquor license. She testified that sometime in early March

---

1. She later paid him only $3,700 of the remaining balance because of missing items Green alleged were taken by Norris' workmen.

1989, a major water problem developed which resulted in the flooding of the basement and the ladies room, ruining the carpet. The tenant also testified that because Norris failed to correct the flooding, she withdrew the funds from her checking account which resulted in her bank dishonoring the rent check she had given Norris for the January, February and March rent. No other rent payments were made by the tenant.

Norris brought an action for possession in the Landlord/Tenant Branch of the Superior Court ("L & T action") on March 27, 1989, for non-payment of rent for January, February and March. The court later entered a judgment of possession in June 1989 because the tenant failed to make any of the protective order payments. Norris reacquired possession of the building by formal eviction on July 6, 1989, and on that same day, he displayed both "For Sale" and "For Rent" signs in the large picture windows which faced Georgia Avenue. Norris testified that shortly thereafter he received several inquiries, and in September 1989, he contracted to sell the building, closing the sale and transferring title to the buyer in early January 1990. The building was conveyed to the buyer with all the equipment that the tenant had paid for or paid to have installed.

## C. Procedural history

Upon learning of the sale, the tenant instituted the present action for unjust enrichment, seeking compensation for the value of the equipment for which she paid. Norris counter-claimed for back rent from January to July 6, 1989 (the date of eviction), and damages, in lieu of rent, from July 7, 1989, to December 1989 (the last month before the property was conveyed to the buyer). The jury awarded the tenant $31,576 in unjust enrichment damages; that finding is not challenged in this appeal. The jury also awarded the landlord a $500 per month late fee for the months of January, February and March, 1989, and the full $2,600 per month rent for the months of January and February, 1989. For March, however, the jury only awarded rent up to March 27, 1989, the

date on which Norris filed the L & T action. The jury awarded no rent for the period between the filing of the L & T action and the eviction date. The jury also awarded no damages from the eviction date through December 1989.

Following the trial, Norris moved for judgment n.o.v. and for an amended judgment, maintaining that, as a matter of law, he was entitled to rent or damages for the entire period of March 27 through December 1989, i.e., rent for the lease amount ($2,600 plus $500 late charge) for March 27 to June 1989, and damages at the rate of $3,100 per month, from July to December 1989, and to an award of reasonable attorney fees. The trial court denied the motions and this appeal followed.

## II.

### A. Scope of Review

■ In resolving an appeal from the denial of a motion for judgment n.o.v., the evidence, and all reasonable inferences therefrom, is viewed in the light most favorable to the party who obtained the verdict, and reversal is warranted only where the evidence shows that no jury could reasonably reach the verdict returned. *Consumers United Ins. Co. v. Smith,* 644 A.2d 1328, 1339 (D.C.1994); *District of Columbia v. Cassidy,* 465 A.2d 395, 397 (D.C.1983); *Marcel Hair Goods Corp. v. National Sav. & Trust Co.,* 410 A.2d 1, 5 (D.C.1979). The issues presented for our resolution, viewed from that perspective, are: (1) whether Norris was entitled to rent for the period March 27 to July 6, 1989, and post-eviction damages from July to December 1989; and (2) whether Norris was entitled to reasonable attorney fees.

### B. Discussion

#### 1. March 27 to July 6, 1989

In the order denying the motion for judgment n.o.v., the trial judge ruled that Norris' claim "was without merit for the reasons asserted in [the tenant's] opposition...."[2]

---

2. Summarized, the tenant asserted the following in its opposition to the judgment n.o.v. motion:

Norris in effect retook possession of the leased premises by a combination of events: (1) a flood

The tenant argued that the landlord's filing of the L & T action on March 27, 1989, amounted to a termination of the lease, and, thereby ended any obligations that the tenant might have had pursuant to the lease. The trial court's adoption of that argument as a ground for denying the landlord's motion was error.[3]

In *Bown v. Hamilton*, 601 A.2d 1074, 1077–78 (D.C.1992), we held that the tenant's rent obligation is not terminated or waived because the landlord filed an L & T action for possession. We rejected the tenant's contention that she had been constructively evicted, observing that the filing of a possessory action "in no way affected the tenant's existing possession of the property," hence there was no eviction. *Id.* at 1078. Thus, in this case, the filing of the L & T action, by itself, did not relieve the tenant of the obligation to pay rent so long as she was legally in possession of the premises. Moreover, there is nothing in the record in this case showing that the landlord in any way interfered with the tenant's right of quiet enjoyment.[4] *See Hyde v. Brandler*, 118 A.2d 398, 400 (D.C.1955) (there is no breach of covenant of quiet enjoyment unless there is an actual eviction from or disturbance of quiet enjoyment). We have also made it unmistakably clear that a landlord must resort to the courts to regain possession of demised property when a tenant breaches the lease contract. *Lennon v. United States Theatre Corp.*, 287 U.S.App.D.C. 202, 204, 920 F.2d 996, 998 (1990) ("landlord's remedy for non-payment of rent is to sue for it") (citations omitted); *Simpson v. Lee*, 499 A.2d 889, 893 (D.C.1985) (self-help is unacceptable). In sum, the tenant's claim that she was freed of the obligation to pay rent by the filing of the possessory action is not sustainable.

The tenant also argued before the trial court and in this court, without any legal support, that Norris was obligated to seek recovery of past rent in the L & T action for possession, and his failure to do so in that action constituted a waiver of his right to recover rent for the period between the filing of the L & T action and the eviction. She further argued that the failure to request an award of rent arrears when he filed the L & T action is *res judicata* on the question of entitlement to rent during the entire period of possession. On that score the tenant is flatly wrong. First,

> [w]hile the term res judicata is sometimes used broadly ... it may help analysis to confine it to its classic and precise reference, as interposing an absolute bar to the relitigation of the same cause of action between the parties or their privies. If the doctrine of res judicata applies, both parties are concluded, not only as to things which were determined but as to all matters which might have been determined as well. The case before us involves what is more precisely referred to as the doctrine of collateral estoppel. That rule prohibits parties who have litigated one cause of action from relitigating in a second and different cause of action matters of fact which were, or necessarily must have been, determined in the first litigation.

*Tutt v. Doby*, 148 U.S.App.D.C. 171, 459 F.2d 1195, 1197 (1972) (citations omitted). The L & T action was for possession, and any other claims that Norris may have had against the tenant remain viable. *Id.* 459 F.2d at 1198 (in an action for possession, "amount of back rent due was not genuinely before the court," and cannot be said to have been decided for estoppel purposes).

---

of the premises from sewage and/or backed up exterior drainage; (2) landlord's failure to timely correct the problem; (3) landlord terminated the lease when he sued for possession on March 27, 1989; (4) his entitlement to rent ended at that point, and his claim, if any, was for damages, to which he was not entitled because he had constructively evicted the tenant; and (5) Norris did not use reasonable efforts to mitigate his damages between July 6, 1989, and December 1989.

3. The tenant did not make this argument in support of the trial judge's ruling in its brief to this court, however, the argument was presented at oral argument.

4. At oral argument, counsel for the tenant claimed that the landlord locked the tenant out of the building thereby constructively evicting the tenant. There is no record support for counsel's claim.

■ Second, a claim for unpaid rent for the months preceding the filing of the possessory action is a distinct cause of action which can be separately litigated from the action for possession, *id.* at 1200, therefore, a landlord is not entitled to back rent as a remedy in a possessory action.[5] *See Bell, supra,* 139 U.S.App.D.C. at 112, 430 F.2d at 485. Norris did request a protective order, in lieu of rent, for the months following the filing of the action. The trial court granted that request and Norris was able to obtain judgment for possession when the tenant failed to make any of the protective order payments. Thus, Norris has not waived his right to back rent, nor was he estopped from raising the claim for back rent in this action.

■ Nor did Norris' failure to abate the flooding problem excuse the tenant's rent obligation because, in this jurisdiction, it is settled that "[w]here covenants are independent, nonperformance by one party does not excuse the other party from the need to satisfy his obligations." *Interstate Restaurants, Inc. v. Halsa Corp.,* 309 A.2d 108, 110 (D.C.1973) (unless parties state otherwise, the covenants in a lease are independent); RESTATEMENT (FIRST) OF CONTRACTS § 290 (1932).[6] There is no provision in the lease relieving Green of her obligation to pay rent for a breach as she alleges here. It is also settled that "a [commercial] landlord has no duty to make repairs to commercial properties beyond what he undertakes in the lease." [7] *Lennon,* 287 U.S.App.D.C. at 206, 920 F.2d at 1000. Therefore, even if Norris failed, as the tenant claimed, to abate the flooding problem, the tenant was still obligated to pay the rent. *Interstate Restaurants, Inc.,* 309 A.2d at 110.[8]

Finally, having established that the lease did not impose a duty on the landlord to abate the flooding problem,[9] *Lennon supra,* 287 U.S.App.D.C. at 206, 920 F.2d at 1000,

---

5. To be sure, back rent can be sought along with possession in the same action, but a request for back rent is a separate claim, requiring personal service upon the tenant. D.C.Code § 45–1411 (1992); Super.Ct.L & T R. 3 (1993); *Tutt, supra,* 148 U.S.App.D.C. at 174, 459 F.2d at 1198; *Bell v. Tsintolas Realty Co.,* 139 U.S.App.D.C. 101, 112, 430 F.2d 474, 485 (1970) ("suit for possession cannot, by its very nature, eventuate in a judgment for back rent ... in the absence of personal service"). We know of no authority, and the tenant has cited none, holding that failure to ask for back rent along with the possessory action bars a later recovery for that rent.

6. The RESTATEMENT (FIRST) OF CONTRACTS § 290 provides:

Non-performance of a covenant by one party to a lease or other conveyance of land, unless performance of the covenant is an express condition, does not excuse the other party from performing his covenants further than the law of property governing the effect of.eviction of the grantee or of waste by him provides.

7. The tenant's obligation to repair the plumbing is set forth in paragraph 22 of the lease where it states:

Lessee will keep said premises in good order and condition, and Lessee will make all interior and exterior repairs, replacements and decorations including plumbing, electrical, air conditioning, heating system and at Lessee's own cost and expense.

8. In the motion for judgment n.o.v. and in his brief, Norris states that the jury was specifically instructed that the tenant could not use the water or flooding problem as a defense to the nonpayment of rent claim. The jury instructions, however, are not a part of the appeal record and we ordinarily do not consider such assertions because "[a]ppellate review is limited to ... the record before us, and we cannot base our review ... upon statements of counsel which are unsupported by that record." *Cobb v. Standard Drug Co.,* 453 A.2d 110, 112 (D.C.1982) (citation omitted). During oral argument, however, counsel for the tenant conceded that such an instruction was given to the jury and he did not challenge the propriety of the trial court in giving it. Therefore, since both counsel agree on the point, we will accept that the jury was so instructed. This provides further support for our holding that the trial court erred in denying the motion for judgment n.o.v. The trial court's reliance, in part, on the tenant's claim that the tenant was excused from paying rent because of the water problem is both a contradiction of the jury instruction and erroneous.

9. The tenant argued that paragraph 23 of the lease imposed a duty on the landlord to repair damages to the leasehold caused by fire or other cause as "is covered by the Lessor's insurance ... and the rent, until such repairs are made, shall be apportioned according to the part of the premises which is usable by Lessee." The landlord testified, without contradiction, that he had no insurance to cover the type of loss asserted by the tenant. Therefore, the rent obligation should not be excused, and, even assuming paragraph 23 applied, which it could not on this record, the rent should only be apportioned for the area affected by the flooding.

and since the tenant alleged no other reason for withholding the rent, the only other possible basis for relieving the tenant of the obligation to pay rent is that the promise to abate constituted a new promise, independent of the lease. Norris insists no such promise was given, but even assuming that Norris agreed to make the repairs, Norris maintains, and we agree, that the promise was not supported by a valid consideration. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71 (1972); *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1068 n. 6 (D.C.1980). Therefore, even if made, such a promise could not be enforced. Thus, that theory provides no support for the jury verdict.

For all of these reasons, viewing the evidence in a light most favorable to the tenant, as we must, *Cassidy, supra,* 465 A.2d at 397, no reasonable jury could, as a matter of law, excuse the tenant from the duty to pay rent during this period. Therefore, the trial court should have granted the motion for judgment n.o.v. for unpaid rent and late charges for the period of March 27 through July 6, 1989.

### 2. Mitigation, July to December 1989

■ The tenant also argued, and the trial court adopted that argument as the basis for its ruling, that Norris was not entitled to damages for the period after the eviction, but before the property was conveyed to the buyer, because he did not use reasonable efforts to mitigate his damages. The failure to mitigate damages is an affirmative defense and the tenant has the burden of showing the absence of reasonable efforts to mitigate. *See Lennon, supra,* 287 U.S.App.D.C. at 206, 920 F.2d at 1000. At trial, Norris established that rent had accrued at the rate of $2,600 per month plus $500 per month in late fees. *See id.* (damages are computed as the rentals provided for in the lease). He also testified that his only effort to mitigate, which he considered reasonable, was to place conspicuous "For Sale" and "For Rent" signs in the Georgia Avenue windows of the property on the day of the eviction, and that shortly thereafter he received several telephone inquiries about the rental or sale of the building. Further, in September 1989, he signed a sales contract for the building which went to closing in early January 1990.

During cross-examination, Norris acknowledged that he did not advertise the property in the newspaper, list it with a realtor, or hold any open houses. He defended that course claiming that those activities were either not useful for his purpose or were inapplicable to the sale of commercial properties. In addition, the landlord testified the time it took him to secure a buyer after the eviction was comparable to the time it had taken a realtor to secure Green as a tenant when he was seeking to lease the property in late 1988. The tenant presented no evidence, apart from the testimony elicited from Norris on cross-examination, to rebut landlord's efforts to mitigate or to show that those efforts were not reasonable. *See Consumers United Ins. Co., supra,* 644 A.2d at 1344 n. 21 (defendant has burden of producing evidence to mitigate or abate damages).

In civil actions such as this one, a party's conduct is measured against the hypothetical "reasonable person," and a party seeking to recover damages or escape liability must demonstrate that the behavior in question conformed to that standard. In actions which require proof of reasonableness to determine how to award damages or assess liability, some evidence must be presented to establish the standard of reasonableness [10] because a jury cannot be left without some guidance in determining that issue. The only evidence presented by the tenant challenging the "reasonableness" of Norris' behavior was through cross-examination; but that did nothing to establish a standard. Instead, each juror was left to make his or her own subjective determination of reasonableness within the context of the sale/rental of commercial property. Consequently, because the tenant failed to prove that Norris did not use reasonable efforts to mitigate his damages, the trial court erred in sustaining the jury verdict and Norris is therefore enti-

---

**10.** Certainly expert testimony could be presented to establish the standard, however, we do not hold that such testimony is required in order to do so. In short, we consider that the nature of the proof required to establish reasonableness in this context to be an open question.

tled to damages for the period between the eviction and December 1989. Damages are computed as the rentals at the lease price, plus re-letting expenses, if any. *Lennon, supra,* 287 U.S.App.D.C. at 206–07, 920 F.2d at 1000–01.[11]

### 3. Attorney fees

█ Finally, Norris contends that he was entitled to recover attorney fees pursuant to paragraph 10 of the lease and *Simons v. Federal Bar Bldg. Corp.,* 275 A.2d 545, 552 (D.C.1971). The trial court denied Norris' request stating "the need for attorney . . . fees were at best, de minimis," because the landlord only prevailed with respect to rent for the January to March period which the tenant conceded the landlord was entitled to receive. Since we have held, however, that Norris was entitled to both pre-eviction rent and post-eviction damages, Norris' showing of "a need for attorney fees" is not "de minimis." Thus, we reverse and remand to the trial court with direction to reconsider the question of the landlord's entitlement to reasonable attorney fees.

*Reversed and remanded.*

---

**11.** Norris contends that the damage award should include six months rent at $2,600, plus reletting costs, plus "perhaps the $500 per month late charge. . . ." There is nothing in the Norris/Green contract indicating that late fees should be a part of the damage award or that such award is necessary to make Norris whole. Norris has cited no authority supporting the inclusion of late charges, and our reading of *Lennon* (calculating damages at the lease price) and other cases, raises questions whether late charges should be included in the award of damages for the post-eviction period. *See, e.g., Consumers United Ins. Co., supra,* 644 A.2d at 1338 n. 12, 1340 n. 16 (measure of damages specifically established by contract); *Rowan Heating–Air Conditioning v. Williams,* 580 A.2d 583, 585 (D.C.1990) ("measure of damages is the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed"). We do not decide whether late charges should be included as part of the damages, however, since that question was not resolved by the trial court. Upon remand Norris is free to present, before the trial judge, his contention that late charges should be included as an element of post-eviction damages.