RUSSELL HILLIARD AND LISA HILLIARD, HUSBAND AND WIFE,
DOING BUSINESS AS R & L RENTALS, APPELLANTS, V.
MARILYN E. ROBERTSON, APPELLEE.

570 N.W. 2d 180

Filed October 24, 1997.   No. S-96-124.

Jeffrey L. Hansen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellants.

Randall L. Lippstreu, of Harris & Lippstreu, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

MCCORMACK, J.

This is an action by Russell Hilliard and Lisa Hilliard against Marilyn E. Robertson to recover unpaid rent. The county court for Scotts Bluff County, Nebraska, found that the Hilliards were not entitled to unpaid rent because they failed to mitigate their damages. The county court further found that Robertson was entitled to a return of her $250 security deposit. The Hilliards appealed to the district court for Scotts Bluff County, which affirmed the county court's decision. The Hilliards then appealed to the Nebraska Court of Appeals. In a memorandum opinion filed April 1, 1997, the Court of Appeals affirmed the

judgment on the issue of mitigation of damages and remanded the cause with directions to vacate Robertson's judgment for $250 for the security deposit. The Hilliards petitioned for further review of that order. We now affirm the judgment on the issue of mitigation, reverse the judgment on the issue of the return of the security deposit, and remand the cause with directions on the issue of attorney fees.

## BACKGROUND

In January 1994, Robertson moved to Scottsbluff, Nebraska. On March 18, Robertson entered into a rental agreement with the Hilliards for the lease of an apartment located at 2602 Avenue A, Scottsbluff, Nebraska. The lease was for a 1-year term at $300 per month. Robertson was also required to pay a damage deposit of $250. The lease included a provision for a $25 late fee for any payment not made by the second day of each month.

The lease stated:

> If Tenant [Robertson] vacates the premises during the original or any extended term of the Lease, then Tenant shall be responsible for the balance of rent due for the remainder of the lease term, forfeiting all of the security deposit. In giving notice to vacate, renter [Robertson] must give Landlord [the Hilliards] written notice 30 days prior to moving out. All notices being either for the 15th of the month or the 30th (31st) of the month, as there is no daily prorate.

After moving into the apartment, Robertson learned she had no control over the heat in her apartment. Robertson later discovered that the heat was controlled by a thermostat in the adjoining apartment occupied by tenant Susan Barry. Barry testified that in the winter, she had to heat her apartment to 80 or 90 degrees for Robertson's apartment to keep above 60 degrees. Robertson contacted the Hilliards in writing requesting that a thermostat be installed in her apartment.

On or about July 29, 1994, Robertson gave the Hilliards written notice of her intention to move out of the premises by August 31, due to problems with the lack of heat, the infestation of mice, and the unsanitary conditions of the apartment. On

August 3, the Hilliards gave Robertson notice that Robertson would continue to be responsible for monthly rent until the premises were rerented. Robertson moved from the premises on August 31 and did not pay rent for the remaining term of the lease. Robertson's apartment remained vacant for the remainder of the lease term.

Bill Bauer, the apartment manager, testified that a "For Rent" sign was placed in the front yard once Robertson informed the Hilliards she would be vacating the apartment. Barry testified that the telephone number on the sign was faded and hard to read, and several people had knocked on her door to inquire about the apartment. Newspaper ads were not used by the Hilliards to advertise the rental property until after Robertson's rental term had expired. The Hilliards, by and through Bauer, showed the apartment to approximately 20 to 30 prospective tenants in an effort to rerent the premises. The Hilliards' efforts were not successful.

### The Hilliards' Lawsuits

The Hilliards brought an action in Scotts Bluff County Court against Robertson for the rent due under the lease for the period after Robertson vacated the premises. Robertson filed a counterclaim seeking return of the $250 security deposit.

### County Court's Decision

The county court found in favor of Robertson on the Hilliards' claim for the rent for the balance of the lease term and ordered the Hilliards to pay Robertson $250 on her counterclaim for her security deposit and $111.50 in costs. In a letter to the parties, the judge stated that the parties entered into a binding 1-year lease and that Robertson vacated the premises prior to the expiration of that lease. The judge stated that the Hilliards did not take reasonable steps to mitigate their damages and were not, therefore, entitled to collect rent for the balance of the lease term after abandonment. The judge explained that no evidence was presented to allow the Hilliards to keep the $250 deposit; therefore, Robertson was entitled to a return of the deposit.

### DISTRICT COURT'S OPINION

The Hilliards appealed this decision to the district court for Scotts Bluff County. The district court affirmed the county court's decision.

### COURT OF APPEALS' DECISION

The Hilliards then appealed the district court's decision to the Court of Appeals. The Court of Appeals filed a memorandum opinion and judgment on appeal affirming the judgment of the county court on the issue of mitigation of damages. However, the Court of Appeals remanded the cause with directions, reversing the decisions of the county court and the district court on the issue of the security deposit.

## ASSIGNMENTS OF ERROR

Summarized and restated, the Hilliards assign as error the county court's determination that (1) the Hilliards did not mitigate their damages and (2) Robertson is entitled to a return of the $250 security deposit.

## STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Richardson v. Mast*, 252 Neb. 114, 560 N.W.2d 488 (1997); *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996); *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996); *Coldwell Banker Town & Country Realty v. Johnson*, 249 Neb. 523, 544 N.W.2d 360 (1996).

In reviewing a judgment awarded in a bench trial, the appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997); *Cotton v. Ostroski, supra*; *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996); *RaDec Constr. v. School Dist. No. 17*, 248 Neb. 338, 535 N.W.2d 408 (1995); *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995).

## ANALYSIS

### MITIGATION OF DAMAGES

The Hilliards assert that the Court of Appeals erred in finding that they did not mitigate their damages. The Hilliards argue that Robertson has the burden to prove that they did not take reasonable steps to mitigate their damages and that Robertson failed to satisfy this burden. We disagree.

A landlord has a duty to relet the premises in order to mitigate damages when a tenant abandons the premises prior to the expiration of a lease. *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997); *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993); *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990). This duty to mitigate requires that the landlord take all reasonable steps to reduce his damages. *Properties Inv. Group, supra*; *S.N. Mart, Ltd., supra.* In a landlord's action to recover unpaid rent upon a tenant's abandonment of the premises prior to the end of the lease term, the tenant has the burden to show that the landlord unreasonably failed to relet the premises and mitigate damages. *Id.*

There is ample evidence in the record to support the county court's factual finding that the Hilliards did not mitigate their damages. The only advertising used by the Hilliards was a "for rent" sign in the front yard, and testimony regarding this sign indicated that the telephone number was faded and difficult to read. The Hilliards did not advertise the apartment in the newspaper until after the term of the lease had expired. Based on this evidence, we are unable to conclude that the county court was clearly wrong in its finding that the Hilliards failed to mitigate their damages.

The Hilliards, however, cite *Norris v. Green*, 656 A.2d 282 (D.C. App. 1995), for the proposition that cross-examination of Bauer was not enough evidence to prove that the Hilliards failed to mitigate their damages. The criteria are the weight and sufficiency of the evidence, and it does not make any difference whether this evidence comes in on direct examination or cross-examination. In *Norris*, after the tenants vacated the property,

the landlord placed " 'For Sale' " and " 'For Rent' " signs in the window of the property. *Id.* at 284. The *Norris* court found that the only evidence presented by the tenant regarding the reasonableness of the landlord's behavior was through cross-examination and that the evidence did not establish a standard. Based on this holding, the Hilliards argue that the cross-examination of Bauer was not enough to establish a standard. They argue that in order to meet her burden, Robertson would have to produce a qualified or expert witness to establish such a standard. Without such a witness, they argue, Robertson cannot prove that the Hilliards failed to meet such a standard and, therefore, did not reasonably mitigate their damages.

This argument is without merit. In *S.N. Mart, Ltd., supra*, the court found that a landlord failed to mitigate damages by failing to relet the premises to a prospective tenant without any expert testimony adduced at trial. On appeal, this court found that the evidence supported the finding that no serious effort was made to relet the premises, and the trial court's finding regarding that matter was not clearly wrong.

In *Properties Inv. Group, supra*, a vice president of a real estate management and brokerage company, who was considered an expert witness, testified that the landlord's failure to list the property with a broker for 3 months adversely affected the landlord's chances of leasing or selling the property. The court, however, examined the actions the landlord took to relet the premises. The court upheld the determination that the landlord did mitigate its damages despite expert testimony to the contrary.

Based upon a reading of the above cases, we cannot say that the district court's ruling was clearly wrong. Even if Robertson had introduced testimony from an expert witness, triers of fact are not required to take opinions of experts as binding upon them. See, *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993). We, therefore, reject the proposition that Robertson needed to produce expert testimony to prevail on her claim that the Hilliards failed to mitigate their damages.

RETURN OF SECURITY DEPOSIT

The Hilliards' assigned as error to the Court of Appeals the county court's ruling that Robertson was entitled to a return of the $250 security deposit. They argue that because Robertson failed to make any demand for the return of the deposit, she is not entitled to a refund. The Court of Appeals found that the county court was clearly wrong in awarding the return of the security deposit. We disagree.

Neb. Rev. Stat. § 76-1416(2) (Reissue 1996) states:

> Upon termination of the tenancy property or money held by the landlord as prepaid rent and security may be applied to the payment of rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with the rental agreement or section 76-1421. The balance, if any, and a written itemization shall be delivered or mailed to the tenant within fourteen days after demand and designation of the location where payment may be made or mailed.

Pursuant to this statute, it is the tenant's demand for return of the deposit which triggers the landlord's obligation to refund the deposit or provide the tenant with a written itemization of damages. See, also, *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989) (holding that tenant was not entitled to recover security deposit absent evidence establishing that landlords failed to comply with tenant's request for return of deposit).

The Hilliards argue that pursuant to § 76-1416(2), Robertson was required to make a demand within 14 days of the termination of the tenancy. Because this was not done, the Hilliards argue they are not obligated to return the deposit. This argument is without merit.

Statutory language is to be given its plain and ordinary meaning. In addition, this court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997); *Boss v. Fillmore Cty. Sch. Dist. No. 19*, 251 Neb. 669, 559 N.W.2d 448 (1997); *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). Based on a

reading of the plain language of the statute, we determine that the 14-day limitation language refers to the time allowed the landlord to return the deposit, not the time in which a demand must be made by the vacating tenant.

In the present case, demand for the return of the deposit was made when Robertson filed her counterclaim seeking return of the security deposit. Pursuant to § 76-1416(2), that demand then triggered the Hilliards' obligation to refund the security deposit. Having determined that a demand was made by Robertson, we find that the county court was not clearly wrong in ordering the Hilliards to return the security deposit. In her counterclaim, Robertson also asks that she be awarded attorney fees because of the failure of the Hilliards to return the security deposit. Section 76-1416(3) provides that if the landlord fails to comply with subsection (2), the tenant may recover reasonable attorney fees.

## CONCLUSION

The county court, whose decision was affirmed by the district court, was not clearly wrong in its determination that the Hilliards failed to mitigate their damages and in its order that the Hilliards were to refund the security deposit. Thus, we conclude that the Court of Appeals was correct in its determination regarding the Hilliards' failure to mitigate, but was incorrect in remanding the issue of the security deposit to the district court with directions to vacate. This cause is remanded to the Court of Appeals with directions to remand to the district court. The Court of Appeals is to direct the district court to affirm the judgment of the county court and to remand the case to the county court to determine the reasonable attorney fees to be awarded to Robertson under § 76-1416(3) because of the Hilliards' failure to return the security deposit.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.