IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BEL FURY INVESTMENTS GROUP V. STEWART


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BEL FURY INVESTMENTS GROUP, LLC, A NEBRASKA
LIMITED LIABILITY COMPANY, APPELLANT,

V.

TREVOR E. STEWART, APPELLEE.


Filed April 6, 2021.    No. A-20-508.


Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge, on appeal thereto from the County Court for Douglas County: STEPHANIE R. HANSEN, Judge. Judgment of District Court affirmed.

Justin D. Eichmann, of Houghton, Bradford, and Whitted, P.C., L.L.O., for appellant.

Lawrence G. Whelan, of Whelan Law Office, for appellee.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

This appeal involves a dispute between a landlord, Bel Fury Investments Group, LLC (Bel Fury), and a tenant, Trevor E. Stewart. Specifically, the dispute concerns whether Bel Fury's unilateral rent increases terminated the written lease agreement and created a month-to-month tenancy under the default statutory provisions. The county court found in favor of Stewart and ordered Bel Fury to return Stewart's security deposit. The district court affirmed the judgment and awarded attorney fees to Stewart. Finding that the district court did not err in affirming the judgment of the county court or in awarding attorney fees to Stewart, we affirm.

BACKGROUND

On February 19, 2013, Bel Fury and Stewart entered into a written lease agreement for a residential property in Omaha, Nebraska. The lease agreement provided for a term of 12 months, commencing on March 1, 2013, with a monthly rent of $750. Stewart provided the value of 1 month's rent as a security deposit. The agreement provided for additional 6-month extension terms as follows:

> Unless at least two month's [sic] notice, in writing, be given by the Tenant to the Landlord or one month's notice by the Landlord to the Tenant previous to the expiration of the lease, of an intention to terminate the lease at the end of the term, then the lease shall be extended for an additional period of six months. Unless one month's notice of intention to terminate at the end of such extension be given by one of the parties, the lease shall be further extended for six month period to six month period thereafter until either party furnishes the other at least one month's of intention [sic] to terminate.

The written lease agreement did not contain any provisions regarding rent increases in the event of additional 6-month terms.

With respect to early cancellation of the lease by Stewart, the agreement provided:

> If termination occurs before the expiration of the original term of the lease, a 60-day notice must be given to Landlord, along with a 10% cancellation fee of the total annual value of the rental agreement which is equal to $900.00 (NINE HUNDRED DOLLARS AND NO CENTS) and forfeiture of all security deposits.

> If termination occurs before the expiration of any extension term of the lease, a 60-day notice must be given to Landlord, along with a 10% cancellation fee of the total annual value of the rental agreement (to be determined at the time of cancellation), and forfeiture of all security deposits.

It is uncontested that Stewart continued to reside at the property beyond the original 12-month term. It is also uncontested that Stewart did not object when Bel Fury raised the monthly rent on January 30, 2014; January 29, 2015; and January 26, 2016. The record shows that Stewart duly paid the increased rent without protest until January 2017.

On January 30, 2017, Bel Fury sent Stewart a letter notifying him that his rent would again be increased. This was less than 30 days prior to the conclusion of the sixth 6-month extension term, which ended on February 28. On February 27, Stewart called Bel Fury and gave oral notice that he intended to terminate the lease in 30 days. Bel Fury's agent told Stewart that his notice of intent to terminate must be written, and that he must give 60 days' advance notice according to the terms of the lease agreement. That same day, Stewart sent Bel Fury written notice of his intent to terminate. Because Bel Fury had told Stewart that he must give 60 days' advance notice, his letter stated that Stewart intended to terminate "our rental agreement effective May 1, 2017." Stewart resided on the property through April 30, remitting rent for March and April. After vacating the premises, Stewart did not request the return of his security deposit.

On May 31, 2018, Bel Fury filed a complaint in the county court for Douglas County alleging that Stewart had failed to comply with the terms of the written lease agreement and

requesting $1,590.57 in damages. The request for damages was based on an itemized accounting, which reflected that Bel Fury had retained Stewart's security deposit and credited it toward various fees, which exceeded the amount of the deposit. The itemization was appended to Bel Fury's complaint.

Stewart filed an answer and a counterclaim, alleging that Bel Fury had refused to accept his notice of termination and that as a result, he had incurred damages in the form of an $855 rental fee and $49.07 in utility charges for the month of April 2017. Stewart alleged that Bel Fury had refused to refund his $750 security deposit and made a formal demand for its return. Stewart additionally requested reasonable attorney fees.

A bench trial on Bel Fury's claims and Stewart's counterclaims was held on May 4, 2020.

Bel Fury presented the testimony of Scott Bloemer, a managing member of Bel Fury. Bloemer testified that Bel Fury's "case-in-chief [was] primarily about the cancellation fee, which was not paid by [Stewart]." On cross-examination, Bloemer clarified that Bel Fury was only requesting a $1,056 cancellation fee and not the additional damages alleged in its complaint. Bloemer testified that the basis for this fee was Stewart's failure to give notice of his intent to terminate the lease at least 30 days prior to the conclusion of the 6-month extension term. Bloemer testified that because Stewart had not provided sufficient notification, he was subsequently bound to an additional 6-month extension term, and that Stewart was required to comply with the early cancellation provisions of the lease agreement, which included a fee.

Stewart testified on his own behalf. He testified that he was requesting only the return of his security deposit as well as attorney fees and costs. Stewart testified that he received Bel Fury's last written notice of rent increase on February 2, 2017. Stewart testified that he had not consented to the 2017 rent increase and that he only paid rent at the increased rate in March and April to avoid conflict with Bel Fury. In support of his request for attorney fees, Stewart submitted an affidavit written by his counsel.

In a journal entry and order, the county court found that there "was no mutual assent to the change in the rental amount" and that because "there was no mutual assent to the change in the contract term, there is no contract." The county court found that because there was no enforceable contract, the default provisions of the Uniform Residential Landlord and Tenant Act applied and that a month-to-month tenancy existed between the parties. The county court therefore ordered Bel Fury to return Stewart's $750 security deposit. The order did not include an award of attorney fees to Stewart.

Bel Fury appealed the county court's order to the district court for Douglas County. Bel Fury assigned that the county court erred in (1) determining that there was no mutual assent to the change in rental amount, (2) determining that there was no contract between the parties, and (3) applying "common law/statutory law" to the case. Stewart also filed a statement of errors in the district court on cross-appeal, assigning that the county court erred in not awarding him reasonable attorney fees.

After hearing arguments, the district court issued an order affirming the judgment of the county court with respect to the return of Stewart's security deposit and modifying the judgment to award Stewart $5,085.67 in attorney fees. Bel Fury now appeals.

ASSIGNMENTS OF ERROR

Restated, Bel Fury assigns that the district court erred in (1) affirming the holding of the county court which found that Bel Fury's unilateral rent increase terminated the written agreement and created a month-to-month tenancy and (2) modifying the county court's judgment to include an award of attorney fees to Stewart.

STANDARD OF REVIEW

In an appeal from the county court general civil docket, the district court acts as an immediate court of appeals and not as a trial court. See *In re Conservatorship of Mosel*, 234 Neb. 86, 449 N.W.2d 220 (1989). Both the district court and a higher appellate court generally review appeals from the county court for error appearing in the record. *State v. Patterson*, 7 Neb. App. 816, 585 N.W.2d 125 (1998). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486 (2020).

ANALYSIS

*Enforceability of Lease Agreement.*

Bel Fury first assigns that the district court erred in finding that the increases in rent nullified the lease and created a month-to-month tenancy pursuant to the terms of the Uniform Residential Landlord and Tenant Act. Bel Fury argues that the record shows "the parties contemplated an increase in rental amounts," as reflected by the language of the lease agreement. Brief for appellant at 10. In support of this argument, Bel Fury points to the provision relating to the early cancellation fee which states that in the event the tenant terminates the lease early during a 6-month extension term, the tenant would owe a fee amounting to 10 percent "of the total annual value of the rental agreement (*to be determined at the time of cancellation*)" (emphasis supplied). Bel Fury argues that the parenthetical phrase is an acknowledgement by the parties "that the annual value of the rental agreement would change during any extension term." Brief for appellant at 10. Bel Fury does not point to any other location in the lease agreement that provides for rent increases during successive extension terms, nor do we locate any.

Bel Fury further argues that the evidence at trial showed that Stewart assented to the rental increases when he continued to reside on the property beyond the original 12-month term and paid the increased rental rates without objection. Bel Fury argues that "written assent to the modified term is not required when the tenant shows assent by its actions." Brief for appellant at 14. Stewart testified that although he did not object to the rent increases in 2014, 2015, and 2016, he did not assent to the January 2017 increase and instead notified Bel Fury of his intent to terminate the lease. Bel Fury suggests that because Stewart paid the increased rent in March and April 2017 (after he delivered his written notice of termination), Stewart likewise assented to the 2017 increase.

A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *Valley Boys, Inc. v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020). To create a contract, there must be both an offer and an acceptance; there

must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Acklie v. Greater Omaha Packing Co., Inc.*, 306 Neb. 108, 944 N.W.2d 297 (2020). It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. *Id.* It must identify the subject matter and spell out the essential commitments and agreements with respect thereto. *Id.*

The Nebraska Supreme Court has held that when an express lease agreement contemplates the payment of rent in money, the amount of rent is an essential term of the agreement. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). And because rent is an essential term, an agreement to agree on it in the future is not enforceable. *Id.*

In *Gibbons Ranches*, the lease agreement at issue stated: "The term of this lease shall be five (5) years. An annual review of rental rates and terms will be completed in January of each year." *Id.* at 951, 857 N.W.2d at 811. In interpreting this provision, the Supreme Court held that although both parties clearly contemplated a yearly change in the rental rates under the lease agreement, the provision itself was a mere "'agreement to agree'" which was unenforceable. *Id.* at 957, 857 N.W.2d at 815. We determine that this reasoning applies equally to the present case.

To the extent that the lease agreement shows that Bel Fury and Stewart contemplated an increase in rents during successive extension terms, this provision could be no more than an unenforceable "agreement to agree" on rental rates in the future. The inclusion of this provision, and Bel Fury's subsequent reliance on it by unilaterally raising rental rates annually, nullified any provisions in the lease agreement having to do with 6-month extension terms. Although Stewart acceded to the first three rent increases and considered himself bound by the terms of the agreement, this does not prove that the contract was, in fact, enforceable. We therefore determine that the district court did not err in finding that there was no meeting of the minds with respect to Bel Fury's rent increase in January 2017 and that the relationship between the parties at that date was governed by the language of the Uniform Residential Landlord and Tenant Act which was in effect at the relevant dates. See Neb. Rev. Stat. § 76-1401 et seq. (Reissue 2018).

Section 76-1414(4) provides that unless provided otherwise by a valid rental agreement, "the tenancy shall be week to week in case of a roomer who pays weekly rent, and in all other cases month to month." A month-to-month tenancy may be terminated "by a written notice given to the other [party] at least thirty days prior to the periodic rental date specified in the notice." § 76-1437(2).

Because the written lease agreement between Bel Fury and Stewart was without effect, the default statutory rule from § 76-1414(4) applied, and a month-to-month tenancy was created. It is undisputed that Stewart provided 60 days' advance notice of his intent to vacate the residence, even though only 30 days' notice was required. See § 76-1437(2). Furthermore, no early cancellation fee would have been owed by Stewart under a month-to-month tenancy.

We conclude that the county court did not err in finding that Bel Fury's unilateral rent increases nullified the provisions of the lease agreement related to extension terms and that the default statutory provisions applied to the parties' situation, nor did the district court err in so affirming. This argument fails.

*Attorney Fees.*

Bel Fury assigns that the district court erred in modifying the judgment of the county court to award Stewart $5,085.67 in attorney fees. As to this issue, the district court's order found:

> Although the County Court did not address [Stewart's] request for attorney fees in its judgment, it is clear that an appellate court will treat silence on the matter as implicitly denying the request. *State ex rel. BH Media Grp., Inc. v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020); *Murray v. Stine*, 291 Neb. 125, 132, 864 N.W.2d 386, 391 (2015).

> Under the law in effect at the time of this lawsuit, Neb. Rev. Stat. § 76-1416(2) provided that once a tenant demands return of his security deposit, the landlord shall "within 14 days" remit the "[b]alance, if any, and a written itemization shall be delivered or mailed to the tenant." The law is clear that a counterclaim filed by a tenant asking for the return of the security deposit constitutes a demand. *Black v. Brooks*, 285 Neb. 440, 449, 827 N.W.2d 256, 263 (2013). At no time after Stewart's counterclaim was filed did Bel Fury comply with § 76-1416(2). Pursuant to § 76-1416(3), Stewart is entitled to an award of attorney fees.

On appeal, Bel Fury argues that the district court erred in relying on *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013), because it claims that there exist "fundamental differences between the present matter and the facts outlined in *Black v. Brooks, supra*, and [*Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997)]." Brief for appellant at 17.

In Nebraska, attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). Section 76-1416(3) permits the recovery of attorney fees when a landlord fails to comply with § 76-1416(2). Section 76-1416(2) provides:

> Upon termination of the tenancy, property or money held by the landlord as prepaid rent and security may be applied to the payment of rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with the rental agreement. . . . The balance, if any, and a written itemization shall be delivered or mailed to the tenant within fourteen days after demand and designation of the location where payment may be made or mailed.

Here, it is uncontested that Stewart made a formal demand for the return of his security deposit when he filed his counterclaim on September 14, 2018. It is also uncontested that Bel Fury did not return Stewart's security deposit or otherwise send him a written, itemized accounting after the demand was made.

In *Hilliard v. Robertson, supra*, the Supreme Court held that the "14-day limitation language [in § 76-1416(2)] refers to the time allowed the landlord to return the deposit, not the time in which a demand must be made by the vacating tenant." *Id*. at 240, 570 N.W.2d at 185. The Supreme Court then determined that the county court had not erred in ordering the landlord to return the tenant's security deposit and further remanded the case so that the county court could determine appropriate attorney fees. The Supreme Court relied on *Hilliard v. Robinson, supra*, in

*Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013), a case holding that a tenant's suit demanding the return of his security deposit triggered the 14-day window established in § 76-1416(2).

Bel Fury argues that the holdings in these cases should not apply here. It argues that because it provided Stewart with a written itemization both after Stewart vacated the property and as an attachment to its complaint, it was absolved of any further obligation to provide an itemized accounting under § 76-1416(2). We find this argument to be unpersuasive.

Although Bel Fury did provide Stewart with a written itemization prior to the proceedings in this case, there was no suggestion in the record that this was done in relation to any formal demand under § 76-1416(2). To the extent that Bel Fury suggests that Stewart should have relied on these prior itemizations, evidence at trial showed that there were at least two versions of the document, that each was inconsistent with the other, and that there was some confusion as to the final amount charged to Stewart's account. During the 14-day period following Stewart's formal demand, Bel Fury could have taken the opportunity to reconcile these conflicting documents, but it chose not to. Finally, the language of § 76-1416(2) does not provide any exceptions to a landlord's duties under that section where it has previously provided a written itemization of the tenant's account. In its brief, Bel Fury suggests that the district court erred when it failed to invent such an exception, despite the plain language of the statute and the district court's lack of authority to do so. See *Thomas v. Peterson*, 307 Neb. 89, 948 N.W.2d 698 (2020) (statutory language is to be given its plain and ordinary meaning, and appellate court will not resort to interpretation to ascertain meaning of words which are plain, direct, and unambiguous).

We determine that the district court did not err in finding that Bel Fury failed to comply with § 76-1416(2) and finding that an award of attorney fees was appropriate. In determining reasonable attorney fees, a court considers several factors: the nature of the litigation, the time and labor required, the novelty and difficult of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *In re Claim of Roberts for Attorney Fees*, 307 Neb. 346, 949 N.W.2d 299 (2020).

At trial, Stewart supported his request for attorney fees with an affidavit authored by his attorney. The affidavit reflected that Stewart's counsel completed 41 hours of work in this case at an hourly rate between $125 and $275. Bel Fury argues on appeal that because the district court did not explicitly evaluate the factors articulated in *In re Claim of Roberts for Attorney Fees, supra*, the "record is without justification" for the district court's award. Brief for appellant at 18. However, we find that the submitted affidavit, as well as the record itself, supported the district court's award. See *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000) (if contents of record, i.e., pleadings, introduced discovery documents, time spent in court as shown by court record, and other items that support award, show allowed fee not unreasonable, then fee not untenable or abuse of discretion).

The district court did not abuse its discretion in awarding Stewart $5,085.67 in attorney fees, nor did the court err in affirming the county court's order requiring Bel Fury to return Stewart's $750 security deposit.

CONCLUSION

We conclude that the district court did not err in affirming the judgment of the county court which found that Bel Fury's unilateral rent increases nullified the written lease agreement and which ordered Bel Fury to return Stewart's security deposit. We further conclude that the district court did not abuse its discretion in awarding attorney fees to Stewart. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.