BENJAMIN S. BAKER, ADMINISTRATOR, APPELLEE, V.
RACINE-SATTLEY COMPANY, APPELLANT.

FILED MARCH 10, 1910.     No. 15,959.

1. Trial: MOTION TO DIRECT VERDICT: WAIVER OF ERROR. If a defendant desires to submit his case to the jury on the evidence of the plaintiff, and asks the court to instruct the jury to return a verdict in his favor, he should make his motion to that effect without reservation. If he does not, the court may refuse to entertain it. If the defendant on the overruling of his motion offers testimony in support of his defense, this will amount to a waiver of the error, if it be such.

2. Appeal: PLEADING: REVIEW. Where upon the trial both parties to the action have treated the case as though the affirmative defenses contained in the answer were denied by a reply, or have treated the reply as sufficient in form and substance to put such affirmative defenses in issue, such conduct will amount to a waiver of the insufficiency of the pleading, and that question cannot be raised for the first time in the court of review.

3. Negligence: EVIDENCE: QUESTIONS FOR JURY. Evidence examined, its substance stated in the opinion, and *held* sufficient to require the trial court to submit the questions of negligence and contributory negligence to the jury.

4. Trial: ADMISSION OF EVIDENCE: INSTRUCTIONS. Admission of immaterial and incompetent evidence may be cured by an instruction to the jury to disregard it, where it is of such a nature as not to prejudice the substantial rights of the complaining party.

5. ———: WITNESSES: CREDIBILITY: QUESTIONS FOR JURY. Ordinarily the credibility of a witness is a question for the determination of the jury, and it is within their province to credit the whole of his testimony or any part of it which appears to them to be convincing, and reject so much of it as in their judgment is unworthy of credit.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Rich, O'Neill & Gilbert,* for appellant.

*Benjamin S. Baker, contra.*

BARNES, J.

Action in the district court for Douglas county by the administrator of the estate of Walter J. Williamson, deceased, against the Racine-Sattley Company, a corporation, for damages on account of the alleged negligence of the defendant company in causing the death of his intestate. Plaintiff had a verdict and judgment, and the defendant has appealed.

It appears that at the close of the plaintiff's evidence in chief counsel moved the court to direct the jury to return a verdict for the defendant, for the reason that the uncontradicted evidence disclosed such contributory negligence on the part of the plaintiff's intestate as should, as a matter of law, prevent a recovery on the part of the plaintiff. The motion was overruled, and this ruling is assigned as reversible error. In disposing of this assignment it is sufficient to say that by declining to stand upon its motion, and by the production of evidence in support of the defenses set forth in its answer, defendant waived the right to complain of the adverse ruling above mentioned. In *Union P. R. Co. v. Mertes*, 35 Neb. 204, it was held that, if a party desires to submit his case to the jury on the evidence of the plaintiff, and asks an instruction that the jury find for the defendant, he should make his motion to that effect without reservation. If he does not, the court may refuse to entertain it. If the defendant on the overruling of such motion offers testimony, this is a waiver of the error, if it be such. This rule is so well settled that no additional authority need be cited to support it, and this contention must therefore be resolved against the defendant.

It is contended by the defendant, for the first time in this court, that having pleaded contributory negligence in its answer, and the plaintiff having replied thereto by way of negative pregnant, there was no denial of contributory negligence on the part of plaintiff, and therefore he was not entitled to recover. Of this contention it is

sufficient to say that the record discloses that the case was tried in the court below on the theory that an issue as to contributory negligence was tendered by the pleadings. Appellant in its motion for a new trial nowhere called the court's attention to the reply, and in fact treated it as a denial of the allegation of contributory negligence. Neither do the assignments of error filed in this court direct our attention to the condition of the pleadings. In *Krbel v. Krbel,* 84 Neb. 160, it was said: "Where both parties to an action treated the case as though affirmative defenses in the answer were denied by a reply and tried the case upon that theory, this court on appeal will treat the case as though such reply had been filed." The case of *Chicago, St. P., M. & O. R. Co. v. Lundstrom,* 16 Neb. 254, was one where the plaintiff in error took no exceptions to the reply before trial, either by motion or otherwise, nor did it claim upon the trial that the new matter contained in its answer was admitted for want of reply, and it was there held that defendant could not avail itself of that point by raising it for the first time in this court. To the same effect are *Sheibley v. Fales,* 81 Neb. 795, and *Stanser v. Cathers,* 82 Neb. 136. We are therefore of opinion that the district court did not err in overruling defendant's motion for a directed verdict.

It is further contended that the court erred in overruling its motion to direct a verdict in its favor at the close of all of the evidence, and that the evidence is not sufficient to sustain a verdict for the plaintiff. The record discloses that on and prior to the 17th day of May, 1907, the defendant corporation owned and occupied a large wholesale implement building in the city of Omaha abutting on the Tenth street viaduct; that the general entrance to the building was from the said viaduct to the third floor thereof; that some distance from the front entrance there was an elevator, used both for freight and passenger service, extending from the top floor to what is known as the first or ground floor of the building; that

various kinds of agricultural implements were stored upon the first floor in such a way that there was an alley extending from the elevator shaft on that floor about 16 feet to the north, and thence for a long distance to the rear of the building, where was located the office of the business manager; that the condition of the windows on the first floor, and the manner in which the agricultural implements were stored, rendered that floor dark to a certain extent, and especially was the light dim and uncertain about the elevator shaft; that the building was lighted with electric lights, which then, and for some time previous thereto, were and had been out of -repair so that there was no light at or near the elevator shaft, although the elevator was equipped for such lights; that the elevator was also equipped with what is known as "automatic gates," which were operated by the rise and fall of the elevator itself in such a manner that, when the cage approached either of the floors in its passage up and down the shaft, the automatic gate, which bars the entrance to the shaft on that floor, would be raised to such a height that, when the elevator stopped at the proper place for use upon that particular floor, the gate would stand up in the entrance of the shaft some six or seven feet, and afford free entrance to and exit from the cage of the elevator; that at that time, and for some time previous thereto, the automatic gate on the first floor of the elevator was out of repair, and was tied or fastened up at the place or point where it would be found if it was in good working order when the elevator cage was at that floor at the point proper to receive or discharge passengers; that the plaintiff's intestate was unacquainted with the condition in the building, and knew nothing of the facts in relation to the construction or repair of the elevator, except in a general way he had been told that the elevator lights were out of repair. In the forenoon of the day above mentioned deceased, who was an expert electrician, was sent by the Omaha Electric Company, in whose service he was then engaged, to defendant's build-

ing in response to a letter which had been sent by the defendant's general manager to his employer to send some one to repair the lights, and especially the one attached to the beam of the elevator above described; that the deceased entered the building from the viaduct upon the third floor; that he there met one of the defendant's employees who conducted him to the elevator, and thence to the first floor of defendant's building, and directed him to the office of the manager. When the deceased met the manager, he informed him that he was there in response to the letter above mentioned, and the manager replied that he was glad to see him. The employee who conducted the deceased to the office of the manager testified that the next time he saw the deceased he was lying in the pit, at the bottom of the elevator shaft, some 12 feet below the first floor of the building, in a dying condition. That the defendant was guilty of negligence in permitting its elevator and the gate thereof on the first floor to be and remain in such a condition as to deceive one who might desire to make use of it, and in permitting the unlighted condition of that floor of the building, and of the elevator shaft itself, seems clear beyond question.

It appears from the testimony of a witness of the name of Wallace, who was produced by the defendant, that he was the employee who took charge of Williamson to conduct him to the place where he was to work, when he left the office of the general manager; that they walked down the alley from the manager's office to the point where it intersected with the passageway to the elevator; they then turned toward the elevator shaft, and, when they approached it, Wallace said, "I will ring for the elevator"; that the deceased replied, "The elevator is right here now", and stepped into the shaft and fell to the bottom of the pit. On cross-examination Wallace testified as follows: "Q. Mr. Wallace, taking your version of what you said to young Williamson from the time that you said, 'I will call the elevator', until the time that the young man said, 'The elevator is here now',

and stepped in, was there any perceptible space of time? A. Just a few seconds. Q. Was there any perceptible —did not the two men run right in together? A. Well, very near. Q. So, then, from the time that you said, 'I will call the elevator' and he said 'The elevator is here now', and stepped in, there was neither time for you to do or say a thing to prevent it? A. No, sir. Q. You did not raise your hand, or say, hold, or stop, because there was not time? A. There was not time. Q. Did not you say to him, then, I will call the elevator, and walk immediately there; and when you said, I will call the elevator, he immediately responded, the elevator is here, and he stepped in? A. Yes, sir. Q. What was the condition in front of this elevator as to being light or dark at this time? A. Well, it was fairly light. It was not dark, and it was not light, it was dim. Q. It was an uncertain dim light? A. It was dim. Q. You knew at the time that the young man stepped into the elevator shaft that the bar or gate was stationary, that is, tied up there, did you not? A. Yes, sir. Q. You never said anything to him about the gate being tied up, did you? A. No, sir. Q. You did not say anything to him about the elevator was not protected with a bar or gate, or anything, did you? A. No, sir. Q. You say you did not? A. No. Q. You were familiar with the fact that there were no lights in the elevator, there were no lights in the shaft below, and no light in front, were you not? A. Yes, sir."

Under this state of the evidence, we are satisfied that the question of contributory negligence was one for the jury, and that they were justified in resolving that question in favor of the plaintiff and against the defendant, for it clearly appears that by reason of the dim and uncertain light, and the open unguarded elevator shaft with the automatic gate in such a position as to invite entrance thereto, together with the fact that Wallace did not say or do anything to overcome the natural, and to be expected, belief in the mind of Williamson that the elevator was at hand, justified him in stepping into the

shaft, and such action on his part did not constitute contributory negligence. We are therefore of opinion that the trial court did not err in overruling defendant's motion for a directed verdict.

Defendant assigns error for the reception of certain evidence produced by the plaintiff upon the trial. It appears that the father of the deceased was permitted to testify to a conversation which took place between himself and the defendant's witness, Wallace, when they met at the plaintiff's office some time after the accident in question. If this was error, which question we do not determine, it was cured by the instruction given by the trial court to the jury by which they were told that this evidence should be entirely disregarded. While it is true that in some cases error in the reception of incompetent evidence cannot be cured by an instruction to the jury to disregard it, yet in the case at bar there was nothing in the nature of the evidence complained of which could prejudice the substantial rights of the defendant, and which an instruction, like the one above mentioned, would not cure.

Finally, it is contended that, because the plaintiff was permitted to contradict some of the statements of the witness Wallace in the way of impeachment, the testimony of that witness must either be accepted as a whole, or, if any portion of it be rejected by the jury, they must entirely disregard the whole of it; that, if the testimony of Wallace be disregarded, then the evidence is not sufficient to sustain the verdict. This contention cannot be sustained. The credibility of the witness was a question for the jury, and it was within their province to credit the whole of his testimony or any part of it which seemed to them to be convincing, and reject so much of it as in their judgment was not entitled to credit.

A careful examination of the record satisfies us that it contains no reversible error, and the judgment of the district court is therefore.

                                        AFFIRMED.