GENERAL FIBERGLASS SUPPLY, INC., APPELLEE, V.
MARK ROEMER, INDIVIDUALLY, AND
PROTECTIVE COATING SPECIALISTS, INC, APPELLANTS.

594 N.W. 2d 283

Filed April 29, 1999.    No. S-98-236.

Mark J. Krieger, of Bowman & Krieger, for appellants.

James M. Kelley, of Berry, Kelley & Hansen, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In this breach of contract action, appellants, Protective Coating Specialists, Inc (PCSI), and its president and sole shareholder, Mark Roemer, appeal a judgment from district court against Roemer individually. General Fiberglass Supply, Inc. (GFSI), sued Roemer and PCSI to recover contract damages for payment of goods it delivered. GFSI asserted that the sales were made to Roemer in his individual capacity and

demanded recovery from him or, alternatively, if the court determined the sales were made to PCSI, then it demanded judgment against PCSI. The trial court determined that the sales in question were made to Roemer individually and entered judgment against Roemer. We affirm.

## BACKGROUND

PCSI was organized in 1979 as a Nebraska corporation. PCSI was engaged throughout its existence in the business of commercial roofing. Roemer became PCSI's president and became the sole shareholder in 1989. On April 16, 1994, without Roemer's knowledge, the Secretary of State administratively dissolved PCSI for failing to pay its occupation tax.

On six occasions during September and October 1994, Roemer purchased insulation and other goods on credit from GFSI, most of which were ordered by telephone through GFSI salesman Douglas A. Orcutt. The purchases, including freight costs, totaled $10,620.59. The sales contracts' terms requested full payment within 30 days or a charge of 1½ percent per month would subsequently be assessed on the unpaid balance. The order forms, billing statements, and bills of lading are all addressed to "Protective Coating Spec." and do not list Roemer by name. Roemer testified at trial that he made the purchases in question on behalf of PCSI. Since at least 1991, Roemer purchased products periodically from GFSI and paid for them with PCSI's corporate checks. However, Orcutt, who handled GFSI's account with Roemer and PCSI since 1991, asserted that he dealt with Roemer as an individual. Orcutt stated that Roemer never expressly told him that the orders were for a corporation. However, on cross-examination, Orcutt equivocated. He appeared to agree with a statement from Roemer's counsel that Orcutt always dealt with Roemer as an agent for a corporation.

PCSI and Roemer refused to pay GFSI for the goods ordered and received in September and October 1994. Roemer claimed that the insulation received was defective, as it allegedly deteriorated shortly after it was installed.

GFSI filed suit against Roemer in county court in July 1995. Roemer, now realizing that PCSI was dissolved, filed a certificate of revival with the Secretary of State (dated September 26,

1995) and paid the delinquent occupation tax. About the same time, GFSI amended its petition to include PCSI as a party. GFSI alleged in its amended petition that Roemer ordered the goods in question in his individual capacity and that GFSI delivered the goods to Roemer and demanded judgment for a principal balance of $10,620.59, prejudgment interest, and costs. In the alternative, GFSI demanded the same damages against PCSI if the court found that PCSI had been revived and that the sales were to PCSI. In their amended answer, Roemer and PCSI argued that all goods GFSI provided were provided to PCSI and that the goods were defective. In addition, PCSI counterclaimed for damages totaling $24,522.10, the amount PCSI alleged was the cost of repairs necessary to remove and replace the defective materials. The case was removed to the district court due to the amount requested in the counterclaim.

After a bench trial, the district court entered judgment in favor of GFSI and against Roemer individually, and dismissed PCSI's counterclaim. The trial court determined that "the testimony of Mr. Orcutt was, and the court so finds that with respect to the instant controversy, plaintiff and its representatives dealt with defendant Roemer solely as an individual . . . ." The court awarded GFSI $10,620.59, with interest accruing at 1½ percent per month after October 31, 1994. Roemer and PCSI appeal the judgment, but PCSI does not appeal its dismissed counterclaim.

## ASSIGNMENTS OF ERROR
Roemer assigns the district court erred in holding that (1) GFSI is entitled to judgment against Roemer individually and (2) GFSI is entitled to costs of the proceeding and interest at the contract rate of 1½ percent per month.

## SCOPE OF REVIEW
A suit for damages arising from breach of a contract presents an action at law. *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998); *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 529 N.W.2d 26 (1995). In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Schuelke v. Wilson, supra*; *Richardson v. Mast*, 252

Neb. 114, 560 N.W.2d 488 (1997). The appellate court does not reweigh the evidence, but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See, *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997); *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997).

## ANALYSIS

Initially, we note that PCSI has joined Roemer in appealing the district court judgment. The district court judgment was against Roemer in his individual capacity, not against PCSI. "Only an aggrieved party can take an appeal." *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 911, 531 N.W.2d 523, 527 (1995). As no judgment was rendered against PCSI, PCSI is not aggrieved and has no standing to appeal. See, *Wrede v. Exchange Bank of Gibbon, supra*; *Swallow v. Eureka Mfg. Co.*, 89 Neb. 467, 131 N.W. 918 (1911) (declining to consider appeal where no judgment was rendered against appellants).

As to his first assignment of error, Roemer argues that the trial court's finding that he ordered the products in question in his individual capacity, rather than in his corporate capacity as PCSI's president, is clearly erroneous. Roemer asserts that the evidence undisputedly proves that he placed all the sales orders in question while acting for and on behalf of PCSI. We conclude that although there is not overwhelming evidence that indicates the sales contracts were between GFSI and Roemer as an individual, there is nonetheless sufficient evidence to preclude us from concluding that the trial court's determination of that issue was clearly erroneous.

Orcutt testified that he believed when he took the orders in question from Roemer, he was dealing with Roemer in his individual capacity. Specifically, Orcutt testified on direct examination as follows: "Q. Did you deal with [Roemer] as an individual? A. Yes." The above-quoted testimony is credible evidence relevant to the formation of the oral sales contracts in question and sufficiently supports the conclusion that the sales were between GFSI and Roemer in his individual capacity. However, Roemer asserts that this evidence is directly contradicted by

Roemer's testimony, by the invoices which state "Protective Coating Spec." and do not state Roemer's name, and by Orcutt's own statements on cross-examination. Roemer testified that all products he ordered from GFSI were ordered on behalf of PCSI. He argues that the invoices reflect that GFSI dealt with PCSI. GFSI's contention regarding the invoices is that because the invoices do not state "Protective Coating Specialists, *Inc*," the invoices reflect that GFSI was dealing with a proprietorship.

Roemer's testimony only creates a conflict in the evidence. His view of what inference should be derived from the invoices is contested by GFSI. In reviewing a judgment awarded in a bench trial, we resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See, *Hilliard v. Robertson, supra*; *Sherrod v. State, supra*. As to Orcutt's statements on cross-examination, we agree that Orcutt contradicted his earlier assertion that he dealt with Roemer as an individual. However, Orcutt did not in any way retract his assertion on direct examination that he dealt with Roemer as an individual, and thus that statement remains in evidence. In rendering judgment as the finder of fact in a bench trial, the trial court weighs the evidence in the same manner as does a jury. See *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). This court has consistently held that juries have the right to credit or reject the whole or any part of the testimony of a witness in the exercise of their judgments. *Rakes v. State*, 158 Neb. 55, 62 N.W.2d 273 (1954); *Baker v. Racine-Sattley Co.*, 86 Neb. 227, 125 N.W. 587 (1910).

In *Baker v. Racine-Sattley Co., supra*, the plaintiff argued that because he successfully provoked a defendant's witness to contradict himself, "the testimony of that witness must either be accepted as a whole, or, if any portion of it be rejected by the jury, they must entirely disregard the whole of it," and if disregarded, then the evidence would be insufficient to sustain the verdict. *Baker v. Racine-Sattley Co.* at 233, 125 N.W. at 590. This court responded:

> This contention cannot be sustained. The credibility of the witness was a question for the jury, and it was within their province to credit the whole of his testimony or any part of

it which seemed to them to be convincing, and reject so much of it as in their judgment was not entitled to credit. *Id.* The trial court necessarily discounted Roemer's testimony, discounted the inference Roemer makes from the invoices, and rejected Orcutt's contradictory statement on cross-examination in order to conclude that Roemer individually, rather than PCSI, was a party to the sales contracts. Because the trial court was the trier of fact in a law action, those decisions were within the province of the court's duty to weigh the evidence and judge the credibility of witnesses. Additionally, this court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and will give great weight to the trial court's judgment as to credibility. *Equilease Corp. v. Neff Towing Serv.*, 227 Neb. 523, 418 N.W.2d 754 (1988). Credible evidence remained to support the trial court's determination. Therefore, we affirm the court's determination on this issue, as it was not clearly erroneous.

Roemer additionally argues that contrary to the trial court's alternate conclusion that PCSI did not exist at the time the purchases were made and was not effectively revived, PCSI was either effectively revived or existed de jure or de facto at the time the sales in question were made. Because we affirm the trial court's determination that Roemer entered the contracts with GFSI in his individual capacity, whether PCSI was or was not effectively revived is irrelevant. Thus, we do not reach Roemer's argument on that issue.

### INTEREST AND COSTS AWARD

Roemer asserts that if this court affirms the trial court's finding that he entered the contracts in his individual capacity, we must nonetheless reverse the trial court's award to GFSI of costs and interest at 1½ percent per month because, as to Roemer individually, the sales contracts' terms call for GFSI to receive a usurious rate of interest. He asserts that pursuant to Neb. Rev. Stat. § 45-101.03 (Reissue 1998), the maximum legal rate of interest GFSI could assess against Roemer as an individual is 16 percent annually on the unpaid principal balance. Compare *Classen v. Becton, Dickinson & Co.*, 214 Neb. 543, 334 N.W.2d 644 (1983) (interpreting Neb. Rev. Stat. § 45-101.04(2) (Cum.

Supp. 1982), one of the exceptions to § 45-101.03, as providing that *corporation* may agree to pay any rate of interest by agreement in writing). Because the sales contracts' terms provided for 1½ percent per month interest on the unpaid balance, which at a minimum is 18 percent annually if not compounded monthly, Roemer argues that pursuant to Neb. Rev. Stat. § 45-105 (Reissue 1998), GFSI cannot recover any interest or costs in this action.

We cannot consider Roemer's usury argument because he did not plead usury before the trial court. The claim of usury in this state is a defense to a cause of action. *Farmland Enterprises, Inc. v. Schueman*, 212 Neb. 342, 322 N.W.2d 665 (1982); *Seldin v. Northland Mortgage Co.*, 189 Neb. 175, 202 N.W.2d 174 (1972). Usury must be pleaded to be available as a defense. *Stuart v. Durland*, 115 Neb. 211, 212 N.W. 31 (1927); *McCready v. Phillips*, 56 Neb. 446, 76 N.W. 885 (1898); *Bell v. Stowe*, 44 Neb. 210, 62 N.W. 456 (1895). GFSI prayed for prejudgment and postjudgment interest in its operative petition, yet Roemer did not claim the benefit of the usury laws in his operative answer, much less plead facts in his answer that would support a usury defense. See *Stuart v. Durland, supra* (stating under certain circumstances, defendant need only claim benefit of usury statute in its answer to preserve defense, rather than plead specific facts). Because Roemer asserted this defense for the first time on appeal, we do not reach it.

## CONCLUSION

The trial court's finding that the sales in question were made to Roemer in his individual capacity rather than in his corporate capacity as president of PCSI was not clearly erroneous. We do not reach the issue of whether the sales contracts were usurious because Roemer did not plead the defense of usury at the trial level. We therefore affirm the judgment of the trial court.

AFFIRMED.