ROBERT E. HENTON AND DELORES M. HENTON, HUSBAND AND WIFE, DOING BUSINESS AS PRAIRIE VIEW DEVELOPMENT, APPELLEES, V. LAURA H. NOKES, APPELLANT, AND WYMAN & SON ET AL., APPELLEES.

603 N.W.2d 1

Filed December 3, 1999.    No. S-97-1203.

J. Bryant Brooks, of Brooks & Green, P.C., for appellant.

Larry R. Baumann, of Kelley, Scritsmier & Byrne, P.C., for appellees Robert E. Henton and Delores M. Henton.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Robert E. Henton and Delores M. Henton, doing business as Prairie View Development, brought suit to enforce a construction lien against Laura H. Nokes in connection with a house the Hentons built for Nokes in McCook, Nebraska. Nokes counterclaimed against the Hentons for damages from breach of contract. The district court for Red Willow County found generally in favor of the Hentons on their construction lien claim and dismissed Nokes' counterclaim.

Nokes appealed to the Nebraska Court of Appeals which, in *Henton v. Nokes*, No. A-97-1203, 1999 WL 294488 (Neb. App. May 11, 1999) (not designated for permanent publication), affirmed the trial court's decision as to the Hentons' construction lien claim, but reversed the trial court's dismissal of Nokes' counterclaim and remanded the cause with directions to the district court to enter a judgment on Nokes' counterclaim in the amount of $7,998.68.

The Hentons petitioned for further review of the Court of Appeals' decision on the basis that the Court of Appeals erred in applying a de novo rather than a clearly erroneous standard of review to its appellate evaluation of Nokes' counterclaim and in holding that Nokes was entitled to breach of contract damages in the amount of $7,998.68. Nokes did not cross-appeal seeking further review of the Court of Appeals' affirmance of the judgment in favor of the Hentons on their construction lien claim, and accordingly, that ruling is affirmed. We granted the Hentons' petition for further review and now reverse the Court of Appeals' decision granting relief to Nokes on her counterclaim.

## STATEMENT OF FACTS

The Hentons sold two adjoining lots in McCook, Nebraska, to Nokes, upon which Nokes planned to build a house in which her

in-laws would live. The Hentons agreed to coordinate the construction of the house.

Nokes selected a floor plan and photograph of the type of house she wanted to build, and the Hentons then ordered blueprints. Neither the floor plan nor the blueprints included a basement, but Nokes, who had no training in architecture or engineering, drew up a sketch of a house modified to include a basement and provided it to the Hentons. The Hentons then arranged for construction of the house, including the hiring of a subcontractor, Daniel Rempel.

On April 24, 1994, at the office of Nokes' attorney, Nokes and the Hentons signed a six-page document (the Agreement) pursuant to which the Hentons agreed to build the house for a total of $132,224. The Agreement provided that the house would be built "in conformity with the plans, drafts, blue prints, specifications, and explanations thereof, which are hereunto annexed and made a part hereof."

The record shows that Nokes met with Delores Henton numerous times during the construction of the house. At those times, Delores Henton and Nokes would review the work in progress and the pending bills, and Nokes would pay up to 90 percent of the amount then due. Nokes performed a walk-through of the house in early October 1994 and sent the Hentons a letter, dated October 6, 1994, outlining problems that needed to be corrected. The uncontroverted testimony of Delores Henton at trial was that the majority of the problems listed in the letter were corrected and that she had not been advised of additional problems.

Although not listed in the October 6, 1994, letter, it was established without contradiction at trial that the floor under the guest room sagged and that the sagging occurred because the floor was inadequately supported. The parties stipulated that Nokes spent $7,998.68 to repair it.

On or about October 1, 1994, Nokes' in-laws took possession of the house. On November 22, the Hentons presented Nokes with a final statement which asserted that an additional $22,177.71 was due, consisting of $9,320.10 due under the original agreement and $12,857.61 attributed to "extras." Nokes refused to pay.

On January 17, 1995, the Hentons recorded a construction lien against the house in the amount of $21,222.82, and on February 27, they filed the petition in the instant case. In her answer, Nokes denied, inter alia, that she had received all the credits to which she was entitled. She also counterclaimed for an accounting and for expenses incurred due to contractual breaches by the Hentons, including "the contracted labor and materials which must be paid in the future to correct faulty work and to complete the house."

On October 2, 1997, following a 2-day trial, the district court found generally for the Hentons. The court concluded that Nokes was indebted to the Hentons in the amount of $20,252.33, which consisted of the $9,320.10 claimed by the Hentons as the balance due pursuant to the original contract, plus an additional $10,932.23 for "extras."

The district court also found that Nokes' counterclaim should be dismissed. The district court's decree stated:

> The Court finds that many of the difficulties in the construction were of the Defendants [sic] making. The Court specifically finds that the Defendant ordered the major subcontractor to not place a beam which would reinforce the first floor of the home. The contractor clearly had the beams on site and was ready to use them in the construction until ordered not to by the Defendant. The Court further finds that the subcontractor, Rempel, used his best efforts in obtaining a system which would support the main floor, and, attempted to have the Defendant use a truss system which would fully support the floor. The Defendant wanted to save costs by using the method that was used. Had the Defendant accepted the beam, most of the structural problems that arose would not have arisen, and she can not [sic] be now heard to complain that the house has defects created by her decision. . . .
>
> The Court has no difficulty in accepting the testimony of Bob Hinde [an architect called by Nokes who testified as an expert witness as to the quality of the construction of the house], but the Court finds that in light of the Defendant's decision to not use the beam in the first place,

his testimony becomes unnecessary for the Court to reach its decision.

Nokes appealed the district court's decision to the Court of Appeals, asserting eight assignments of error which the Court of Appeals

> restated and summarized into the following five: The district court erred in (1) finding that the Hentons constructed the house as provided in the contract; (2) failing to correctly assess charges, credits, and penalties; (3) finding that the Hentons pled or proved the existence of subsequent oral change orders; (4) overruling Nokes' motion for new trial; and (5) failing to "clearly set forth findings of fact and conclusions of law in the Decree."

*Henton v. Nokes*, No. A-97-1203, 1999 WL 294488 at \*3 (Neb. App. May 11, 1999) (not designated for permanent publication).

In its unpublished opinion, the Court of Appeals concluded for its standard of review applicable to the case that an action to foreclose a construction lien is one grounded in equity and that

> [i]n an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Id.* The Court of Appeals did not recite a separate standard of review applicable to the appellate review of the counterclaim based on contract although it did recite that the construction of a contract is a matter of law.

In its opinion, the Court of Appeals analyzed Nokes' appeal in two sections, the first labeled "Hentons' Construction Lien" and the second labeled "Counterclaim by Nokes." In the section labeled "Hentons' Construction Lien," the Court of Appeals rejected Nokes' assignments of error and affirmed the district court's holding and award with regard to the Hentons' construction lien claim.

In the section labeled "Counterclaim by Nokes," the Court of Appeals stated that although Nokes had several complaints about the house, the one complaint it deemed critical was that of "the sagging floor and the problems relating to it." The Court of Appeals found it uncontroverted that "the sagging occurred because the floor was inadequately supported" and that "Nokes spent $7,998.68 to repair it." *Henton*, 1999 WL 294488 at *2. The Court of Appeals stated that the controverted issue was who was responsible for the condition of the inadequately supported floor.

The Court of Appeals reviewed various pieces of evidence from the record and concluded that "[h]aving conducted a de novo review of the record, we find that the sagging floor was attributable to the Hentons, not to Nokes." The Court of Appeals accordingly reversed the trial court's dismissal of Nokes' counterclaim and remanded the matter to the district court to enter a judgment on Nokes' counterclaim in the amount of $7,998.68. The Hentons successfully petitioned for further review.

## ASSIGNMENTS OF ERROR

In their petition for further review, the Hentons assert that the Court of Appeals erred (1) in applying a de novo standard of review to Nokes' counterclaim for breach of contract damages and (2) in finding that the sagging floor was attributable to the Hentons, and thus, in holding that Nokes was entitled to breach of contract damages of $7,998.68.

## ANALYSIS

*Standard of Review.*

In the appeal of a case with a pleading structure similar to that of the instant case, we concluded that the plaintiff's lien foreclosure suit was to be reviewed de novo and that the defendant's counterclaim for damages arising from breach of contract was to be reviewed under the "clearly erroneous" standard. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). In *Lange Indus.*, the plaintiff, Lange Industries, Inc. (Lange), brought an action against the project owner, Hallam Grain Co. (Hallam), to foreclose on a mechanic's lien. Hallam counterclaimed for damages from Lange's alleged breach of

contract. The trial court held for Lange on its foreclosure action, but at a reduced amount, and dismissed Hallam's counterclaims. Hallam appealed, and Lange cross-appealed. On appeal, we found that "this court must review Lange's foreclosure suit de novo and Hallam's counterclaims under the 'clearly erroneous' standard." *Id.* at 468, 507 N.W.2d at 469.

Nokes' counterclaim is based on breach of contract. A suit for damages arising from breach of a contract presents an action at law. *General Fiberglass Supply v. Roemer*, 256 Neb. 810, 594 N.W.2d 283 (1999). In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Id.* The appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

Nokes' counterclaim asserts, inter alia, that Nokes "is entitled to credits under the aforesaid Agreement . . . for the contracted labor and materials which must be paid in the future to correct faulty work and to complete the house in accordance with the specifications of said Agreement." Nokes prayed for judgment against the Hentons in an amount for, inter alia, "future expenses to complete the Agreement." Nokes' counterclaim is a claim for damages from breach of contract which should have been reviewed by the Court of Appeals under the clearly erroneous standard.

The opinion of the Court of Appeals states that it reviewed Nokes' counterclaim pertaining to the sagging floor, which was based on contract, de novo on the record. It is clear from the Court of Appeals' unpublished opinion filed May 11, 1999, that the Court of Appeals reweighed the evidence regarding Nokes' counterclaim and came to a conclusion independent of the findings of the trial court. In its opinion, the Court of Appeals discussed various pieces of evidence in the record and came to its own conclusion that the Hentons were responsible for the sagging floor. Such conclusion was made without reference to the trial court's factual findings that many of the difficulties in the construction were of Nokes' making, that most of the structural

problems that arose would not have arisen if Nokes had accepted the beam, and that the Hentons' subcontractor, Rempel, had used his best efforts in obtaining a system which would support the main floor. We therefore conclude that the Court of Appeals erred as a matter of law in applying a de novo standard of review to the issues raised by Nokes' counterclaim based on contract.

## Court of Appeals' Conclusions Regarding Nokes' Counterclaim.

Given our conclusion that the Court of Appeals applied the incorrect standard of review to the appeal of the dismissal of Nokes' counterclaim, we must further analyze whether that error of law was of consequence to the appellate outcome of the case. Accordingly, in order to determine whether the Court of Appeals erred in determining that the sagging floor was attributable to the Hentons and, thus, in holding that Nokes was entitled to breach of contract damages in the amount of $7,998.68 on her counterclaim, we must review the trial court's dismissal of Nokes' counterclaim under the clearly erroneous standard. Under that standard, we view the trial court's factual findings in a light most favorable to the Hentons and resolve any evidentiary conflicts in their favor, giving them every reasonable inference deducible from the evidence. See *General Fiberglass Supply, supra.* We will set aside the trial court's factual findings only if they are clearly erroneous. See *id.*

In its decree, the trial court made various factual findings which supported its ruling that Nokes' counterclaim should be dismissed. The trial court evaluated the evidence and the credibility of the witnesses and found that many of the difficulties in the construction were of Nokes' making. Specifically in regard to the sagging floor, the trial court found that Nokes ordered Rempel "to not place a beam which would reinforce the first floor of the home" because Nokes "wanted to save costs by using the method that was used." The trial court found that the Hentons had the beam on site and were ready to use it in the construction but that Nokes ordered that the beam not be used.

The trial court further found that the Hentons' subcontractor, Rempel, used his best efforts in constructing a system to support the main floor and attempted to persuade Nokes to use a truss

system which would fully support the floor. The trial court found that had Nokes accepted the beam, most of the structural problems that ensued would not have arisen. The trial court concluded that Nokes could not be heard to complain that the house had defects which were created by her decisions and that therefore, her counterclaim based on alleged breach of contract by the Hentons was without merit.

The trial court noted that it accepted the testimony of Bob Hinde, an architect who testified as an expert that he had observed several problems with the construction of the house, including inadequate floor support. However, the trial court stated that in light of Nokes' decision not to use the beam, Hinde's testimony was not necessary for the trial court to reach its decision.

Considering the trial court's ruling on Nokes' counterclaim in a light most favorable to the Hentons, who were the successful parties on the counterclaim at the trial level, we do not find that the trial court's factual findings were clearly erroneous. The trial court found that Nokes made the decision not to use the beam, that Nokes' decision was responsible for the structural problems that arose, and that under the circumstances, Rempel used his best efforts to construct a system which would support the main floor. Such factual findings were supported by evidence in the record including, inter alia, the testimony of Rempel; the testimony of Jene F. Custer, the plumbing and heating subcontractor on the job; the testimony of Troy William Oelkers, an employee of the lumber company that supplied beams for the house; and the testimony of Delores Henton.

As the Court of Appeals accurately set forth in its opinion, there was conflicting evidence, some of which could support a finding that the Hentons were responsible for the sagging floor. However, under the clearly erroneous standard of review properly applicable to the appeal of the counterclaim, we must resolve such conflicts in favor of the Hentons and give the Hentons every reasonable inference deducible from the evidence. See *General Fiberglass Supply v. Roemer*, 256 Neb. 810; 594 N.W.2d 283 (1999). Under this standard, we cannot say that the trial court's factual findings were clearly erroneous.

We conclude, therefore, that the Court of Appeals erred by reviewing the contract counterclaim evidence de novo, in setting aside the trial court's factual findings, in finding that the sagging floor was attributable to the Hentons rather than to Nokes, and in concluding that Nokes was entitled to breach of contract damages in the amount of $7,998.68.

## CONCLUSION

The Court of Appeals erred in applying a de novo standard of review to Nokes' counterclaim for breach of contract damages. Upon further review, we determine that the trial court's factual findings support its dismissal of Nokes' counterclaim and were not clearly erroneous and that the Court of Appeals erred in setting aside such findings on appeal. Nokes did not seek further review of the Court of Appeals' decision affirming the trial court's award to the Hentons on their construction lien claim, and we, therefore, affirm the Court of Appeals' affirmance of the trial court's judgment on that claim. We reverse the Court of Appeals' holding granting relief to Nokes on her counterclaim and remand the cause to the Court of Appeals with directions to reinstate the trial court's dismissal of Nokes' counterclaim.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.